**Stephen P. WINEGAR, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 54209.**

Missouri Court of Appeals,
Western District.

April 21, 1998.

Susan L. Hogan, Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Elizabeth L. Ziegler, Special Asst. Atty. Gen., Jefferson City, for respondent.

Before LAURA DENVIR STITH, P.J., and HANNA and RIEDERE, JJ.

LAURA DENVIR STITH, Presiding Judge.

Stephen P. Winegar appeals the motion court's denial after an evidentiary hearing of his Rule 24.035 motion for post-conviction relief. He alleges that his guilty plea was not entered knowingly, voluntarily, or intelligently because he was misled by counsel into believing that, in exchange for his plea of guilty, he would be sentenced to probation and allowed to serve that probation in California. Mr. Winegar now claims that his probation officer refused to let him leave Missouri. We find that the motion court did not err in holding that Mr. Winegar did not receive ineffective assistance of counsel and his guilty plea was entered knowingly and voluntarily. Accordingly, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Stephen P. Winegar was charged by information with the class B felony of conspiracy to commit murder in violation of Section 564.016. Pursuant to a plea agreement with

the State, on June 19, 1991, Mr. Winegar submitted a petition to enter a guilty plea. In exchange for Mr. Winegar's agreement to testify against his co-conspirators, the State recommended to the court that Mr. Winegar be placed on probation and given permission to leave the state of Missouri. Mr. Winegar wanted to go to California because his wife and two children were living there and he had arranged a job there. Although the parties had not discussed how to grant probation, the judge stated that he "would be inclined probably to impose a ten year sentence and stay the execution and place him on probation and get him going to wherever he feels he needs to go." He then questioned Mr. Winegar regarding his understanding of the plea and the rights he was waiving. Mr. Winegar testified that he had read and understood the guilty plea petition, he understood the plea agreement, he was voluntarily giving up his right to a jury trial, and he had not been coerced in any way. The court found that Mr. Winegar's plea was made voluntarily and intelligently and deferred sentencing until Mr. Winegar had testified in the companion cases.

On August 14, 1991, the court sentenced Mr. Winegar to a term of ten years, but stayed execution of the sentence, placing Mr. Winegar on probation for a term of five years under the supervision of the Missouri State Board of Probation and Parole. The court conditioned Mr. Winegar's probation on his truthfully testifying at a deposition and at trial against one of his fellow conspirators and ordered Mr. Winegar to pay all expenses and costs. In denying defense counsel's request that the public defender fee be made only a civil judgment and not made part of the probation, the judge stated, "It will be made a part of probation that he pay all expenses and costs, including board bill and everything that's involved, and that will give you five years to do that." The judge also specifically orally granted Mr. Winegar permission to leave the state while on probation.

So far as the record shows, the agreement that Mr. Winegar be permitted to leave the state was not included in the written terms of probation. Mr. Winegar's probation officer was apparently aware of the agreement, however, but, according to Mr. Winegar, the probation officer told him "because of the seriousness of your crime and citing where the judge ordered you to pay such and such amount of money and you've not paid very much at all, you're not going to be allowed to go nowhere." Mr. Winegar does not claim that he brought this situation to the attention of either his attorney or the court at any time before his probation was revoked. Sometime in 1995, however, he did move to California, apparently without the permission of his probation officer, but then later returned to Missouri following a car accident on May 12, 1996. He indicates that California "refused to accept" him as a resident, but does not further explain how or why this refusal occurred.

On June 14, 1996, just two months before Mr. Winegar's five-year term of probation was due to expire, his probation was revoked, following a probation revocation hearing, on the grounds that he had left the state without permission, had used illegal drugs, and had failed to appear. Revocation of probation is not directly appealable, *State ex rel. Snider v. Flynn*, 926 S.W.2d 891, 894–95 (Mo.App.1996), but may be reviewed by filing a writ of habeas corpus. *Green v. State*, 494 S.W.2d 356, 357 (Mo. banc 1973); *O'Haren v. State*, 927 S.W.2d 447, 451 (Mo. App.1996); *State v. Madison*, 519 S.W.2d 369 (Mo.App.1975).

Mr. Winegar has not filed a writ of habeas corpus alleging that his probation was improperly revoked. Instead, he filed the Rule 24.035 motion at issue on this appeal. In that motion, as amended, he claimed that he was denied effective assistance of counsel in connection with his decision to enter a guilty plea. Specifically, he asserted that his plea was entered involuntarily and unknowingly because his trial counsel misled him into believing he would be able to go to California while on probation, whereas, in fact, he had not been allowed to do so. Following an evidentiary hearing, the motion court denied Mr. Winegar's 24.035 motion. It found that Mr. Winegar entered his plea voluntarily because he was guilty and wanted to receive probation. The judge also noted that Mr. Winegar did, in fact, move to California and

never complained until filing his post-conviction relief motion that his probation officer refused to let him go to California earlier. Mr. Winegar now appeals denial of his post-conviction motion.

## II.  STANDARD OF REVIEW

■ Our review of denial of a Rule 24.035 motion for post-conviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law were clearly erroneous. Rule 24.035(k); *Leisure v. State*, 828 S.W.2d 872, 873–74 (Mo. banc), *cert. denied*, 506 U.S. 923, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992). Findings and conclusions are clearly erroneous only if, after a review of the entire record, we are left with the definite and firm impression that a mistake has been made. *Leisure*, 828 S.W.2d at 874.

## III.  LEGAL ANALYSIS

In his sole point on appeal, Mr. Winegar claims that his guilty plea was not entered knowingly or voluntarily because he was denied effective assistance of counsel. He alleges that he was misled into believing he would be allowed to go to California while on probation, but that his probation officer refused to let him leave Missouri.

■ In order to prove a claim of ineffective assistance of counsel, the defendant must show, by a preponderance of the evidence, that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would have exhibited under similar circumstances and that he was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *State v. Storey*, 901 S.W.2d 886, 893 (Mo. banc 1995). Prejudice in a guilty plea case is proved by evidence showing a reasonable probability that, but for counsel's errors, the movant would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370–71, 88 L.Ed.2d 203 (1985); *State v. Roll*, 942 S.W.2d 370, 374–75 (Mo. banc), *cert. denied*, —— U.S. ——, 118 S.Ct. 378, 139 L.Ed.2d 295 (1997). When the defendant pleads guilty, the issue of effectiveness of counsel is material only to the extent it affects the voluntariness and understanding with which the plea was made. *Roll*, 942 S.W.2d at 375; *Hagan v. State*, 836 S.W.2d 459, 463 (Mo. banc 1992).

■ The record makes clear that Mr. Winegar did not receive ineffective assistance of counsel which affected the voluntariness of his guilty plea. Rather, the record of the guilty plea and post-conviction motion hearings confirms that Mr. Winegar understood his potential sentence and the terms of the plea bargain. Specifically, the record shows that prior to Mr. Winegar's guilty plea his counsel informed him that he was facing a sentence of five to fifteen years, unless the State charged him as a prior and persistent offender, in which case he could receive up to thirty years imprisonment. At the guilty plea hearing itself, the prosecutor specifically stated that the range of punishment for Mr. Winegar's crime was five to fifteen years in the Missouri Department of Corrections. Mr. Winegar also stated on the record at that hearing that he had read and signed the guilty plea petition, understood its contents, and had no questions about it. He also testified that he had spoken with plea counsel, she had done everything he asked her to do, he was satisfied with her services, and he had no complaints about the way she had handled his case. He admitted that he was not coerced in any way to plead guilty and that, other than the plea bargain, he had not been made any promises in exchange for his plea of guilty.

The record also demonstrates that Mr. Winegar accurately understood the terms of his plea bargain. He was able to recite these terms to the judge and understood that in exchange for pleading guilty he would receive probation. These terms were, in fact, complied with by the prosecutor and the judge. The judge suspended execution of Mr. Winegar's sentence and placed him on probation for a period of five years under the supervision of the Missouri State Board of Probation and Parole, with the specific condition that he be allowed to leave the state. There is no basis for a finding that the plea was involuntary, or that Mr. Winegar did not understand his plea bargain or that the judge

did not enter a judgment in accordance with the plea bargain.

Mr. Winegar's real complaint appears to be that his probation officer refused to let him leave Missouri to go to California and that his probation was revoked, at least in part, based on his leaving the state without permission. Such events, occurring *after* Mr. Winegar entered his guilty plea, could not make that prior plea involuntary. That is, assuming that all of Mr. Winegar's allegations are true, he still received the plea he had agreed to—the probation officer simply refused to comply with some of the conditions imposed. If Mr. Winegar's probation officer refused to comply with the terms of probation established by the judge, as Mr. Winegar claims, he could have brought that to the judge's attention and asked the judge to require the probation officer to allow him to move to California. Alternatively, because permission to move to California was apparently not explicitly set out in the written terms of probation, although such permission was given at the plea hearing, Mr. Winegar could have moved to modify the terms of probation to explicitly include such permission or to clarify that he could move to California before paying all costs and expenses. A judge has authority to modify conditions of probation at any time prior to the expiration of the probation term. *See* § 559.021.4, RSMo 1994.

Mr. Winegar did not take any action to challenge the probation officer's conduct. He does not even claim he brought his concerns to the attention of his counsel or of the court. So far as the record shows, neither the court nor counsel were aware of Mr. Winegar's difficulties until the probation revocation proceeding was brought shortly before the expiration of the five-year term of probation. These events could not retroactively make Mr. Winegar's prior plea involuntary.

If Mr. Winegar's allegations assert any basis for relief, it is for relief from the revocation of his probation if such revocation were based on an inaccurate belief by the court that Mr. Winegar had violated his probation by going to California. Such relief could only be granted, if at all, by means of a writ of habeas corpus, however;[1] it is not available on this appeal of denial of Mr. Winegar's 24.035 motion. *See, e.g., O'Haren v. State,* 927 S.W.2d 447 (Mo.App.1996). For these reasons, the motion court did not err in denying Mr. Winegar's Rule 24.035 motion for post-conviction relief. Judgment affirmed.

HANNA and RIEDERER, JJ., concur.

---

1. While some cases have suggested that a court may treat a motion as if it were a motion for habeas corpus where the movant has simply mistaken the name of the remedy available, *see, e.g., Nebbitt v. State,* 738 S.W.2d 162, 164 (Mo.App. 1987) (declining to treat Rule 27.26 motion as application for writ of habeas corpus); *State v. Gideon,* 510 S.W.2d 190, 192 (Mo.App.1974) (treating an appeal as an original application for writ of habeas corpus), that is not what occurred here. Mr. Winegar is clearly appealing the denial of his post-conviction motion, not the revocation of his probation. In any event, the limited Rule 24.035 record before us does not even include a transcript of the probation revocation hearing. We, thus, could not even determine whether the parole officer was justified by events after the guilty plea in refusing to permit Mr. Winegar to move to California, much less whether the court based Mr. Winegar's revocation on one of the other two, independent grounds for revocation asserted—the use of drugs and failure to appear.