Darrell Glen **JENKINS**, Appellant,

v.

**STATE of Missouri**, Respondent.

No. 22813.

Missouri Court of Appeals,
Southern District,
Division II.

Dec. 16, 1999.

Motion for Rehearing or Transfer
Denied Jan. 4, 2000.

Application for Transfer Denied
Feb. 22, 2000.

Kent Denzel, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Susan K. Glass, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERT S. BARNEY, Judge.

Darrell Glen Jenkins ("Movant") appeals from the circuit court's denial of his Rule 24.035 motion for post-conviction relief.[1]

On January 5, 1998, after reaching a plea agreement with the State, Movant entered pleas of guilty to two counts of stealing, § 570.030, RSMo 1994.[2] The plea court accepted the plea agreement reached by the parties and sentenced Movant to eight years imprisonment in the Missouri Department of Corrections on each count, the sentences to run concurrently "with each other and with all existing sentences."

---

1. All Rule references are to Missouri Court Rules (1998), unless otherwise noted.

2. The record shows that Movant entered *Alford* pleas pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

The record reflects that, at the time of his plea, Movant was already incarcerated in the Department of Corrections in connection with a three year prison sentence imposed by the Circuit Court of Douglas County arising from similar charges. As best this Court can discern, Movant started serving his Douglas County sentence during November of 1996.

Movant timely filed his pro se Rule 24.035 "Motion to Vacate, Set Aside or Correct the Judgment or Sentence" on April 6, 1998, followed by his first amended Rule 24.035 motion on October 26, 1998, in which he alleged that his guilty plea was not knowing and voluntary in that he received ineffective assistance of counsel. Specifically, Movant maintained that plea counsel "misled [Movant] as to the extent of jail time that [Movant] would be entitled to under the plea agreement." The motion court held an evidentiary hearing on October 30, 1998. In a "Judgment with Findings of Fact and Conclusions of Law" filed December 31, 1998, the motion court denied Movant's post-conviction relief motion.

On appeal to this Court, Movant asserts one point of motion court error, to-wit: that Movant received ineffective assistance of counsel due to plea counsel's failure to advise Movant that he would not receive credit for the time he was incarcerated between the filing of charges and sentencing and that such ineffective assistance of counsel rendered Movant's pleas "unknowing, unintelligent, and therefore involuntary."

Appellate review of a denial of a Rule 24.035 motion for post-conviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. *See Miller v. State*, 974 S.W.2d 659, 661 (Mo.App.1998); *see also* Rule 24.035(k), Missouri Court Rules (1999). " 'Findings and conclusions are clearly erroneous only if, after a review of the entire record, we are left with the definite and firm impression that a mistake has been made.' "

*Miller*, 974 S.W.2d at 661 (quoting *Winegar v. State*, 967 S.W.2d 265, 267 (Mo.App. 1998)). "The motion court is not required to believe the testimony of a movant, and we must defer to the motion court's determination of credibility." *Rice v. State*, 988 S.W.2d 556, 558 (Mo.App.1999). "Absent a showing to the contrary, counsel is presumed to have provided effective assistance." *State v. Wright*, 941 S.W.2d 877, 883 (Mo.App.1997). Movant has the burden of proving the grounds asserted for post-conviction relief by a preponderance of the evidence. *See Miller*, 974 S.W.2d at 661.

### Discussion and Decision.

As noted above, Movant claims in his point relied on that plea counsel was ineffective in that counsel "failed to advise [Movant] that he would not receive credit for the time he was incarcerated between the filing of charges and sentencing." However, in the argument section of his brief, Movant complains, instead, that counsel misadvised him by informing him that he *would* receive credit for the time he was incarcerated between the filing of charges and sentencing. This latter claim, nevertheless, is consistent with Movant's claim in his first amended 24.035 motion.

"A claim of ineffective assistance of counsel requires that a defendant show that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and that the defendant was prejudiced thereby." *Rice*, 988 S.W.2d at 558. "To prevail on a claim of ineffective assistance of counsel, the claimant must show by a preponderance of the evidence that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would have exhibited under similar circumstances and that the claimant was thereby prejudiced." *Bishop v. State*, 969 S.W.2d 366, 368 (Mo.App.1998); *see Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct.

2052, 2064, 80 L.Ed.2d 674 (1984); *State v. Storey*, 901 S.W.2d 886, 893 (Mo. banc 1995). To satisfy the "prejudice" requirement, a prisoner who has pled guilty must demonstrate there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *See Redeemer v. State*, 979 S.W.2d 565, 569 (Mo.App.1998). Therefore, once a plea of guilty has been entered, the effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. *See Id.* Absent an abuse of discretion, this Court defers to the trial court's determination as to whether a prisoner's guilty plea was voluntary. *See Id.*

■■■ "Guilty pleas must be made knowingly and voluntarily." *Johnson v. State*, 921 S.W.2d 48, 50 (Mo.App.1996). "In a guilty plea case, any claim of ineffective assistance of counsel is immaterial except to the extent that it impinges the voluntariness and knowledge with which the plea was made." *Rice*, 988 S.W.2d at 558. "Mistaken beliefs about sentencing may affect a defendant's ability to knowingly enter a guilty plea if: 1) the mistake is reasonable, and 2) the mistake is based upon a positive representation upon which movant is entitled to rely." *Johnson*, 921 S.W.2d at 50. " 'An appellant's belief as to his or her anticipated sentence is necessarily subjective, but the test to be applied when determining voluntariness is whether there was a reasonable basis in the guilty plea record for the defendant to have such a belief.' " *Redeemer*, 979 S.W.2d at 572(quoting *Johnson*, 921 S.W.2d at 50–51). As previously stated, "[i]n order to show prejudice in a guilty plea case, a movant must prove that, but for the errors of counsel, he would not have pled guilty and would have demanded a trial." *Rice*, 988 S.W.2d at 558.

■■■ Upon examination of the record, particularly the transcripts of the plea hearing and the hearing on Movant's post-conviction motion, this Court is convinced that if Movant believed, at the time he entered his plea, that he would definitely receive credit for the time he was incarcerated between the filing of charges and sentencing, the belief was not reasonable. The pertinent portions of the transcript of the plea hearing, concerning the issue of jail time credit are set out in the following paragraphs.

THE COURT: And you're to be given credit for all time served awaiting disposition of these charges that you are legally entitled to—it doesn't say legally, it just says that you are entitled to by law. And that's what I would do. As long as we understand that I would make a docket entry that you're to be given credit for all time that you're legally entitled to. Do you understand that that would be the docket entry. Is that right, Mr. Wilson?

MR. WILSON [Appellant's Plea Counsel]: Your Honor, that is correct. I just want to be sure that I'm clear on the record that this charge was filed some time in late April of this year.

THE COURT: Okay. Well-

MR. JENKINS: 1997.

MR. WILSON: Excuse me, of 1997, Your Honor.

THE COURT: Well, let me make sure we understand one another. My understanding of the law is, and I may not have a good, clear grasp of it, that if he is serving time, that he cannot be given credit for a new charge.

MR. WILSON: Until that charge is filed.

THE COURT: Then you know more than I do about it. I didn't know that. Is that your understanding?

MS. GEARY [Prosecutor]: Well, Your Honor—

THE COURT: By the way, the third amended felony information is being filed today.

MR. WILSON: We understand that, Your Honor.

THE COURT: So we've got this thoroughly—I just want to make sure. I don't want any letters from home, you know, from the jail later on that says that I didn't do what I promised to do.

. . . .

MS. GEARY: He gets credit for whatever he gets credit for on the original filing. I too don't know. It's been my understanding that if he was incarcerated when the charge was filed he got credit from that time. But the point is, and the way it's written on the plea form, is that whatever he's legally entitled to. And as Your Honor knows, that's the Department of Corrections' job to make that determination and they'll coordinate with the Sheriff of this county and give him whatever credit he deserves.

THE COURT: Yes. I just want to make sure Mr. Jenkins understands that, that I can't promise him something I can't deliver. Do you want to visit with him about that?

MR. WILSON: You understand you're only entitled to whatever the law gives you on that. From the time the charges were filed, I think you're entitled to all of that. But that would ultimately be the Department of Corrections' determination.

MR. JENKINS: Well, can't he go ahead and grant me—

MR. WILSON: He can grant you all the time you're entitled to.

MR. JENKINS: That's what I want.

MR. WILSON: We just want to be sure. We don't know exactly, but we think we know.

MR. JENKINS: I'd hate to lose all the time that I've put in.

MR. WILSON: We're going to give you every day that we can by law. That's all I can say.

THE COURT: But if there's some question about it, you're going to have to take it up with the institutional probation officer, because the law says that the jailer has the duty of giving you your credit.

MR. JENKINS: Right.

THE COURT: Not the judge. All I can do is, you know, make it an order that you be granted all jail credit that you're entitled to. But as to what you're entitled to, it's the Department of Corrections, through your jailer, that makes that determination. That's the way the statute reads.

MR. WILSON: That's my understanding, Your Honor.

THE COURT: Mr. Jenkins, do you understand that?

MR. JENKINS: Yes, I do.

It is clear that, while the prosecutor and plea counsel both predicted that Movant would get credit for the time he had served from the filing of the charges, it was made obvious to Movant that neither the court nor the attorneys knew exactly how much credit, if any, Movant was entitled to; that the determination of how much credit he was entitled to was the responsibility of the Department of Corrections; and that all Movant was being promised was that he would be awarded all the credit that legally could be granted.

Of further assistance to this Court's determination are portions of the transcript of the evidentiary hearing held on Movant's post-conviction motion:

MR. ALLEN[Appellant's post-conviction counsel]: Did the issue of credit for time served arise during your discussions with Mr. Jenkins?

MR. WILSON: Well, to be perfectly frank, I don't recall having a great deal of pre-plea discussions with Mr. Jenkins, because I was under the impression that we were going to go to trial. . . .

. . . .

MR. ALLEN: Now, were your statements made on the record at the guilty plea truthful as to what you advised Mr. Jenkins regarding what credit he would be entitled to?

MR. WILSON: I'm sure they are. . . .

. . . .

Mr. Jenkins, as I recall, was very concerned that he get credit for his time. And that's perfectly understandable. But he was—he had inquired as to whether he would get retroactive time, as I understand it. And what I mean by that is he was—since he had been incarcerated almost from the time of the offense, he was wondering if he would get time served for that. And I told him at the very least he would not be entitled to any time served that predated the filing of the charges.

I try to, and I told you, I try to advise people that I am not the expert, that's— I typically as[k] that the defendant be entitled to all time served that they are legally entitled to. The final arbiter of that is the Department of Corrections. And I try to advise my clients accordingly.

. . . .

MS. COLBURN[Prosecutor at Motion Hearing]: But in any case the plea agreement indicated, did it not, that he was to be given credit for whatever time he was entitled to or words to that effect?

MR. WILSON: . . . In a case like Mr. Jenkins' it's been my understanding from the records department at the Department of Corrections, from the records personnel, is that you are only entitled to time served from the time the detainer is lodged with the Department of Corrections.

Whether or not I told Mr. Jenkins that, I don't know. It's my standard line, so I assume [I] did. But at the very least, the most amount of time he would be entitled to would be time served from the filing of the charges. But I would never tell them with absolute certainty that he would be entitled to that because I don't know that. That's ultimately up to the Department of Corrections.

Finally, we turn to Movant's own testimony at the motion hearing.

MR. ALLEN: And did you rely on your belief that you would receive credit from the time the charges were filed in choosing to enter your guilty plea?

MR. JENKINS: Yes. At first, just being honest, whenever the judge—we was up for sentencing, I went on what he had said before, but then the judge says, "Well. I don't believe he's entitled to anything." Well, just to be honest, I thought, well, I'm not going to get anything. And then Mr. Wilson brought up that yeah, I would get it from the time— the charges were filed. And I thought, well, hopefully, you know, I will get some. Then Ms. Geary said, "Yeah, Your Honor, I think that"—and that made me believe, you know, yes, I really thought I was going to get it. As a matter of fact when I got back to the institution I presented stuff to the records office and they said absolutely not, I wasn't, you know.

MR. ALLEN: But you were relying on the belief that you would get that credit—

MR. JENKINS: Yes, I was.

MR. ALLEN:—in choosing to enter your guilty plea?

MR. JENKINS: Yes, I was.

. . . .

MR. ALLEN: And if you had known that you would not receive any credit on the Greene County sentences would you have plead [sic] guilty?

MR. JENKINS: I don't think so, no.

. . . .

MS. COLBURN: Okay. Now there was some discussion, I understand, at the time or before you entered your plea about the credit. Now, at one point the judge stated that he was not sure if the attorneys were right about how much time you were entitled to get credit for, isn't that right? Do you recall that?

MR. JENKINS: At one time he said, "I don't believe he's entitled to any," the way I got it, because I thought, well, I didn't have nothing coming. And then

between my attorney and the prosecutor, they both agreed that I did. So, I mean, they convinced the judge that I did.

MS. COLBURN: Okay. The plea form says that you are entitled to credit—that you would get credit for whatever time you were entitled to, is that right?

MR. JENKINS: Yes, ma'am.

MS. COLBURN: Now, there was a point, was there not, and I'm reading from the transcript, where Ms. Geary said, "But the point is, and the way it's written on the plea form, it is whatever he's legally entitled to. As Your Honor knows that's the Department of Corrections' job to make that determination, and they'll coordinate with the Sheriff of this county and give him whatever credit he deserves."

Then the judge said, "Yes. I just want to make sure Mr. Jenkins understands that I can't promise him something I can't deliver. Do you want to visit with him about that?" Then Mr. Wilson said, "You understand you're only entitled to whatever the law gives you on that? From the time the charges were filed, I think you're entitled to all that. But that would ultimately be the Department of Corrections' determination." Now, do you recall him telling you that?

MR. JENKINS: Yes, ma'am.

MS. COLBURN: Okay. Now, I want to go back to something you said when Mr. Allen first started asking you questions here a few minutes ago. I think what he said was, and correct me if I'm wrong, that Mr. Wilson told you that he was relatively sure you could get time for whatever time you served since the charges were filed, but he was not certain. Is that right?

MR. JENKINS: That's what he told me.

This passage further convinces this Court that the only reasonable belief that Movant

could have had concerning credit for time already spent in jail was that he *might* be entitled to the time spent from when the charges were filed. Movant even acknowledges the fact that plea counsel did not assure him that he definitely would get credit for the time he had served since the initial filing of charges. Rather, Movant acknowledged that his plea counsel had told him that he "was relatively sure, but he wasn't certain, but he was relatively sure that [Movant] would" get credit for time already served.

It is not ineffective assistance of counsel for plea counsel to fail to inform a defendant that he or she would not receive credit for the time the defendant was free on bond awaiting trial. *See Redeemer*, 979 S.W.2d at 572–73. The *Redeemer* court stated that there was no ineffective assistance of counsel because the amount of credit for time served to be received toward a sentence was not a direct result or consequence of a guilty plea and "counsel only has an obligation to inform his or her client of the direct consequences of a guilty plea and no duty to inform the client of the collateral consequences of pleading guilty." *Id.* at 572.[3] This same conclusion can be reached in a parallel situation where plea counsel fails to *sua sponte* inform a defendant that he or she would not receive credit for time spent in jail on a separate charge. *See Id.* at 573("To hold otherwise would require trial counsel, *sua sponte*, to advise criminal defendants as to every possible 'non-consequence' of pleading guilty *ad infinitum* ").

However, the court in *Redeemer* recognized that "[w]hen a defendant inquires of his trial counsel concerning a collateral consequence, counsel misinforms him or her regarding that consequence, and the defendant relies upon the misrepresentation in deciding to plead guilty, then counsel's actions may rise to the level of constitutionally ineffective assistance of counsel." *Id.* at 572; *see State v. Aberna-*

---

**3.** *See also* Rule 24.02(b), which outlines the "Advice to [the] Defendant" that must be given by the plea court prior to accepting a defendant's guilty plea.

*thy*, 764 S.W.2d 514, 516 (Mo.App. 1989)("[T]hough parole eligibility dates are collateral consequences of the entry of a guilty plea of which a defendant need not be informed if he does not inquire, [*see Price v. State*, 974 S.W.2d 596, 599 (Mo. App.1998)] when he is grossly misinformed about it by his lawyer, and relies upon that misinformation, he is deprived of his constitutional right to counsel"); *see also Strader v. Garrison*, 611 F.2d 61, 65 (4th Cir.1979); *McMann v. Richardson*, 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970); *Hill v. Lockhart*, 474 U.S. 52, 58–59, 106 S.Ct. 366, 370–71, 88 L.Ed.2d 203 (1985). In the case before us, it is clear that Movant "inquired" about the amount of time served for which he was going to receive credit. However, this Court does not believe that Movant was misinformed to his prejudice. He was told only that he would be entitled to the maximum credit the law would allow. Plea counsel predicted that Movant would get credit from the time the charges were filed but took pains to make sure that Movant understood that this was not a certainty. Movant testified that he knew that plea counsel was not certain about the amount of credit. Further, the plea court also went to great lengths to make sure that Movant understood that the only outcome that could be promised was that Movant would get all the credit allowed by law, but that the Department of Corrections had the responsibility of making the final determination as to what credit, if any, would be received.[4] "[A] plea does not become involuntary because a movant expects a lighter sentence than that actually received." *Cope v. State*, 989 S.W.2d 265, 266 (Mo.App.1999); *see also Minner v. State*, 887 S.W.2d 758, 760 (Mo.App.1994). Further, "the mere prediction or advice of counsel will not lead to a finding of legal coercion rendering a guilty plea involuntary." *Tyus v. State*, 913 S.W.2d 72 (Mo.

App.1995); *Spencer v. State*, 805 S.W.2d 677, 679 (Mo.App.1990).

Considering the foregoing, this Court cannot say that there was a reasonable basis in the guilty plea record for Movant to believe that he would be given credit towards his Greene County sentence for the period of time he spent in prison arising from the Douglas County sentence. *Redeemer*, 979 S.W.2d at 572. Movant's sole point is denied.

The judgment of the motion court is affirmed.

GARRISON, C.J., and PREWITT, J., concur.

---

4. *See Murphy v. State*, 873 S.W.2d 231, 232 (Mo. banc 1994); *State ex rel. Jones v. Cook-* *sey*, 830 S.W.2d 421, 424–25 (Mo. banc 1992).