Greg PEET, Appellant,

v.

STATE of Missouri, Respondent.

No. 23196.

Missouri Court of Appeals,
Southern District,
Division Two.

July 26, 2000.

Douglas R. Hoff, Asst. Public Defender, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Wade Thomas, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Chief Judge.

Appellant Greg Peet ("Movant") appeals from the judgment denying his Rule 24.035 motion after an evidentiary hearing in the Circuit Court of Scott County. We affirm.

On June 12, 1997, Movant pled guilty to one count of statutory rape in the second degree, a class C felony. § 566.034, RSMo 1994. At a subsequent sentencing hearing held July 10, 1997, the State recommended Movant be sentenced to five years' imprisonment. The plea court sentenced Movant in accordance with the State's recommendation.

On October 8, 1997, Movant filed his pro se motion for post-conviction relief pursuant to Rule 24.035, Missouri Court Rules (1997). On February 20, 1998, Movant filed his amended motion for post conviction relief.

In his amended motion and now on appeal, Movant contends his plea counsel was ineffective in failing to object to the prosecutor's recommendation to the plea court

of a five year prison sentence. He further contends he had agreed to an "open plea," which he understood prohibited the prosecutor from recommending a specific sentence. Movant asseverates that he was prejudiced by his plea counsel's ineffectiveness because he did not receive the benefit of his plea bargain and, had he known that the prosecutor would recommend five years' imprisonment, he would not have pled guilty but would have, instead, proceeded to trial.

"Appellate review of a denial of a Rule 24.035 motion for post-conviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous." *Jenkins v. State*, 9 S.W.3d 705, 707 (Mo. App.1999); Rule 24.035(k).[1] Findings and conclusions of law are clearly erroneous only if, after a review of the entire record, this Court is left with the definite and firm impression that a mistake has been made. *Id.* "The findings of the motion court are presumed correct." *Rick v. State*, 934 S.W.2d 601, 605 (Mo.App.1996). "After a guilty plea, a claim of ineffective assistance of counsel is relevant only to the extent it affected the voluntariness and understanding with which the plea was made." *Id.* "To prevail on a claim of ineffective assistance of counsel, the claimant must show by a preponderance of the evidence that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would have exhibited under similar circumstances and that the claimant was thereby prejudiced." *Jenkins*, 9 S.W.3d at 707; *see also Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In order to "satisfy the 'prejudice' requirement, a prisoner who has pled guilty must demonstrate there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Jenkins*, 9 S.W.3d at 708. In the absence of a showing to the contrary, counsel is presumed to have provided effective assistance. *Id.* at 707. "Movant has the burden of proving the grounds asserted for post-conviction relief by a preponderance of the evidence." *Id.*

"If the movant claims he or she pled guilty because he or she was misled, the court must determine whether the movant's belief by which he or she claims to have been misled was reasonable." *Rick*, 934 S.W.2d at 606. "If the movant claims he or she pled guilty due to a mistaken belief about his or her sentence, the court must determine whether a reasonable basis existed for such a belief." *Id.* "In both scenarios, the test is whether a reasonable basis exists in the record for the movant's belief." *Id.* "Only when it appears that a movant's belief is based upon positive representations on which he is entitled to rely will we conclude a movant's mistaken belief is reasonable." *Id.* "'[A] breach of plea agreement occurs where a prosecutor promises to make no recommendation regarding sentencing in exchange for a guilty plea but later makes a recommendation.'" *Id.* (quoting *Sharp v. State*, 908 S.W.2d 752, 755 (Mo.App. 1995)).

Our review of the proceedings in the plea court shows the following pertinent colloquy:

Court: Is there a plea bargain?

Defense Counsel: It is an open plea, Judge.

Court: Do you understand there's no plea bargain, it is an open plea?

Movant: Yes, sir.

Later, during the sentencing phase, the following exchange took place:

Prosecutor: The State's recommendation for Mr. Peet is five years in the Department of Corrections.

Court: Your plea bargain was open?

Prosecutor: So I am arguing five years.

---

1. All rule references are to Missouri Court Rules (2000), unless otherwise noted.

Court: Mr. Peet, it is the judgment of this court that you shall be committed to the Division of Corrections for a period of five years.

Is there any good and just cause or legal reason to be given why sentence should not be pronounced?

. . . .

Court: Are you satisfied with your attorney's [sic] work?

Movant: Yes.

Court: They have done everything that you have asked them to do?

Movant: Yes.

Court: Have you had time to sit down with them and tell them the facts?

Movant: Yes.

Court: You have talked to them and they have explained your rights?

Movant: Yes.

Court: Have they told you the ramifications of what you are doing?

Movant: Yes.

■■■ According to Movant's Rule 24.035 hearing testimony, Movant had two attorneys during the course of the underlying criminal proceedings. His first attorney, Kent Hall, engaged in plea bargain negotiations with the prosecutor. Movant states that in January 1997 Mr. Hall informed him the prosecutor was recommending a plea bargain of five years in the Department of Corrections.[2] Movant testified that he did not "want the five years" and the prosecutor's offer was rejected. Movant stated that his second attorney, Patrick McMenamin, represented him during the plea hearing on July 12, 1997. Movant related that Mr. McMenamin told him he had spoken with Movant's first attorney, Mr. Hall, and that "Mr. Hall had come up with the open plea agreement which he explained ... if I pleaded guilty, they would probably just run it in with my probation, and the prosecutor would not recommend any time towards my sen-

tence. It would be up to the judge." Movant then acknowledged that he was surprised that he had been sentenced to five years in the Department of Corrections because "what Mr. McMenamin explained to me was the Prosecutor would not make any recommendations towards the sentence."

At the same evidentiary hearing, Movant's first attorney, Mr. Hall, testified that Movant didn't want to go to trial and that he wanted to "plead guilty and take his chances." Mr. Hall explained that they "felt his only chance to get probation would be to plead to the charge and have a presentence investigation report leaving us free to argue for probation...." Mr. Hall also stated that when he contacted the prosecutor, he informed the prosecutor that "we just desired to plead guilty to the charge on an open plea basis and not agree to a specific term of five years." Mr. Hall also related that the prosecutor advised him "that was acceptable to him and he would in all liklihood [sic] ask for five years any way. He wouldn't ask for the maximum." While Mr. Hall testified that he had no specific recollection of whether he explained what an open plea meant, he related that it was his standard practice do so. Furthermore, to the question—"Let me ask you, did you ever tell [Movant] an open plea meant that the prosecutor couldn't make any recommendation?"— Mr. Hall answered, "No." He also denied that "an open plea meant the prosecution would remain silent and say nothing at the sentencing stage." Rather he stated, "I feel comfortable I probably told [Movant] the State would ask for five years, but at least in this case we would have the chance for something less."

Movant's sentencing attorney, Mr. McMenamin, testified at the evidentiary hearing that the term "open plea" meant that the prosecutor was free to argue "for however many years that they want to argue for ... and they are free to argue

---

**2.** Movant had previously entered pleas of guilty to two Class C felonies of possession of a controlled substance in 1993 and had been placed on probation for five years.

either for or against probation as well as ourselves." Mr. McMenamin explained that it was his standard practice to explain "the open plea versus a definite number of years to my clients...." While Mr. McMenamin could not specifically remember explaining what an open plea was to Movant, Mr. McMenamin acknowledged that he would not have told Movant that an open plea meant that "the State wouldn't have anything to say or make no recommendation." Furthermore, to the question—"[a]t any time after [the State recommended five years' imprisonment] did [Movant] express to you that the State violated their agreement or should not have argued that or anything to that effect?"—Mr. McMenamin answered, "I don't believe that he did." Rather, the first he heard of Movant's contention that the plea bargain had been violated was after Movant had been placed in the penitentiary and he filed his post-conviction relief motion. Significantly, Mr. McMenamin acknowledged that during the sentencing proceedings Movant expressed no shock arising out of the actions of either the prosecutor or the sentencing court.

Based upon our review of the record, we cannot say that the motion court erred in denying Movant post-conviction relief because there is ample evidence in the record supporting the motion court's findings of fact and conclusions of law. It is clear that the motion court simply did not believe Movant's testimony. " 'The motion court is not required to believe the testimony of a movant, and we must defer to the motion court's determination of credibility.' " *Jenkins*, 9 S.W.3d at 707 (quoting *Rice v. State*, 988 S.W.2d 556, 558 (Mo.App.1999)). Particularly telling is the fact that during the course of sentencing the sentencing court expressly asked Movant if he was satisfied with his attorney's work, and he answered in the affirmative. Furthermore, Movant also acknowledged that his attorney had explained to him the "ramifications of what you are doing." "A motion court may properly consider a de-

fendant's factual representations during a Rule 29.07(b)(4) inquiry in considering subsequent testimony to the contrary." *State v. Driver*, 912 S.W.2d 52, 55 (Mo. banc 1995). "A defendant's expressions of satisfaction with counsel at the Rule 29.07(b)(4) inquiry are relevant to a determination of whether counsel acted contrary to the defendant's direction." *Id.* Indeed, "[c]ertain factual statements elicited by the defendant in the sentencing proceeding may even preclude certain ineffective assistance of counsel claims." *Id.*

Lastly, we disagree that *Rick, supra,* aids Movant. It is factually distinguishable and the evidence presented by the *Rick* movant, unlike the instant matter, was both probative and compelling.

In *Rick*, the Eastern District of this Court reversed the motion court's determination that Rick's counsel had *not been* ineffective. There, during sentencing, defense counsel failed to object when, contrary to what Rick reasonably believed was a plea bargain agreement requiring the prosecutor to make no recommendation for sentencing (thereby allowing defense counsel to argue for concurrent sentences), the prosecutor breached the alleged agreement and recommended consecutive seven year prison sentences. *Rick*, 934 S.W.2d at 604. Unlike the instant matter, during the motion hearing Rick presented a letter from his defense counsel which expressly set out that the prosecutor "would stand silent and not argue for concurrent or consecutive time." *Id.* Furthermore, unlike the instant case, Rick presented as an exhibit, a 'Petition to Enter Plea of Guilty' which expressly recited that "[t]he Prosecuting Attorney promised that if I plead GUILTY, he/she will do the following: no recommendation." *Id.* Additionally, in *Rick*, unlike the matter under review, defense counsel expressly acknowledged that based on his negotiations with the prosecutor he anticipated there would be no recommendation from him. *Id.* at 605. Furthermore, unlike the instant case,

when Rick was asked by the sentencing court about the representation he received from defense counsel, he vehemently protested the prosecutor's recommendations, to-wit:

This man told me he was—he would let me plead with no recommendation, and he just got up and recommended four seven-year terms to run consecutively. So I need to know what motions I need to file to withdraw my *Alford* plea. Because that man lied to me.

*Id.* at 603.

There exists no reasonable basis in the record for Movant's belief that he had an agreement requiring the prosecutor to make no recommendation regarding his sentencing. The judgment of the hearing court is affirmed.

GARRISON, J., concurs.

PREWITT, J., concurs.