

# In the Missouri Court of Appeals Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| THOMAS VENTIMIGLIA, | ) | No. ED101900 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | |
| STATE OF MISSOURI, | ) | Hon. David L. Dowd |
| | ) | |
| Respondent. | ) | FILED: August 25, 2015 |

## Introduction

Appellant Thomas Ventimiglia ("Ventimiglia") appeals from the judgment of the motion court denying his Rule 24.035[1] motion for post-conviction relief without an evidentiary hearing. Ventimiglia pleaded guilty to all charges in two cases brought against him and was sentenced to twenty years' imprisonment by the trial court. On appeal, Ventimiglia contends that the motion court erred in denying his Rule 24.035 motion without an evidentiary hearing because he alleged facts warranting relief that were not clearly refuted by the record. First, Ventimiglia contends that plea counsel rendered ineffective assistance of counsel by assuring Ventimiglia if he entered blind guilty pleas on all counts in both cases against him, the trial court would sentence him to the long-term drug treatment program pursuant to Section 217.362.[2] Second, Ventimiglia avers

---

[1] All rule references are to Mo. R. Civ. P. (2014).
[2] All statutory references are to RSMo. 2000.

that plea counsel rendered ineffective assistance by pressuring Ventimiglia to plead guilty even though Ventimiglia wanted to proceed to trial. Ventimiglia maintains that plea counsel's ineffective assistance rendered his guilty plea involuntary, unknowing, and unintelligent. Because Ventimiglia's claim that his guilty plea was involuntary is directly refuted by the guilty plea record, we affirm the judgment of the motion court.

Factual and Procedural History

On April 26, 2012, Ventimiglia pleaded guilty to one count of second-degree robbery, two counts of second-degree robbery, one count of stealing over $500, and one count of resisting arrest in Cause No. 1122-CR02470-01. Ventimiglia also pleaded guilty to one count of second-degree burglary and two counts of stealing over $500 in Cause No. 1122-CR5426-01. On June 21, 2012, the trial court sentenced Ventimiglia as a persistent felony offender to a total of twenty years' imprisonment.

Ventimiglia pleaded guilty to each of the charges in both causes of action on April 26, 2012. At the outset of the plea hearing, the trial court clarified, and plea counsel confirmed, that Ventimiglia intended to enter blind guilty pleas "with the understanding that the Court is going to ask for a Pre-Sentence Investigation Report." Plea counsel informed the trial court that Ventimiglia planned to plead guilty and would request a sentencing assessment report ("SAR") as well as screening for the long-term drug treatment program. Plea counsel confirmed with the trial court that the drug court already had agreed to accept Ventimiglia into the post-plea drug court treatment program, but that the trial court had "rejected that option." Plea counsel stated that she had discussed the trial court's decision with Ventimiglia, and that he fully understood that the trial court had rejected the drug court treatment program option.

2

During the plea hearing, plea counsel again informed the trial court that she would be "requesting an SAR as well as screening for the long-term treatment program." The trial court explained to Ventimiglia how the SAR process would work, and explained that the purpose of the SAR was to assist the trial court in deciding whether to "sentence [Ventimiglia] to the Missouri Department of Corrections or place [him] on probation under the supervised supervision of the Board of Probation and Parole or any drug treatment programs that they recommend." The trial court then asked Ventimiglia whether he understood that it was "entirely up to [the trial court]" as to whether Ventimiglia was sentenced to a prison term or placed on probation following receipt of the SAR. Ventimiglia confirmed that he understood. Ventimiglia also confirmed he understood that even if the SAR recommended he be placed on probation or in a drug treatment program, the trial court was not required to follow that recommendation and could still sentence Ventimiglia to prison. The following exchange then occurred between the trial court and Ventimiglia:

Trial Court: Has anyone promised you that you will get probation?

Ventimiglia: No, sir.

Trial Court: Has anyone promised you what sentence you will receive?

Ventimiglia: No, sir.

Trial Court: You understand that you cannot take back your guilty plea if I decide not to put you on probation or place you in a drug program and instead sentence you to a prison term? You understand that?

Ventimiglia: Yes, sir.

Trial Court: Is there anything at all about this that you don't understand or have questions about?

Ventimiglia: I understand everything fully.

3

> **Trial Court:** Do you still want to proceed with your plea of guilty on these two cases?
>
> **Ventimiglia:** Yes, sir.

The trial court recited the charges against Ventimiglia, which Ventimiglia confirmed he understood. Ventimiglia also confirmed that he had sufficient time to discuss the charges with plea counsel. The prosecutor proceeded to describe the evidence the State would present with respect to each of Ventimiglia's cases should a trial be held. Ventimiglia stated that the prosecutor accurately described the facts of each case and what he had done concerning each charge against him.

The trial court then made a finding that Ventimiglia was a persistent offender based on the prosecutor's description of Ventimiglia's prior convictions and his admission to those convictions. The prosecutor outlined the range of punishment available for each charge against Ventimiglia in each case. Ventimiglia confirmed he understood the range of punishment for each charge. The trial court proceeded to ask Ventimiglia a series of questions regarding plea counsel's representation:

> **Trial Court:** You've had enough time to discuss both cases with your attorney and all possible defenses you might have at trial?
>
> **Ventimiglia:** Yes, sir.
>
> **Trial Court:** Has your attorney explained all your legal rights to you?
>
> **Ventimiglia:** Yes, Your Honor.
>
> **Trial Court:** Has your attorney answered all your questions?
>
> **Ventimiglia:** Yes, sir.
>
> **Trial Court:** Has your attorney refused to do anything that you asked her to do?
>
> **Ventimiglia:** No, sir.

4

Trial Court: Do you have any complaints with your attorney?

Ventimiglia: No, sir.

Trial Court: Are you satisfied with her services?

Ventimiglia: Yes, sir.

The trial court outlined the various constitutional rights Ventimiglia was relinquishing by pleading guilty instead of proceeding to trial. Ventimiglia indicated he understood. Ventimiglia confirmed that he understood he was giving up those rights by pleading guilty. Ventimiglia denied that anyone had threatened him or members of his family in order to induce him to plead guilty, and stated that he was pleading guilty voluntarily and of his own free will to all of the charges in both cases against him. Ventimiglia stated that he did not have any questions to ask the trial court or plea counsel, and proceeded to enter his guilty plea. The trial court accepted Ventimiglia's guilty plea, found a factual basis for the plea, and concluded that the plea was made "voluntarily and intelligently with a full understanding of the charges."

Ventimiglia appeared before the trial court for sentencing on June 21, 2012. At the sentencing hearing, the State's sentencing recommendation was twenty years' imprisonment for each case, to run concurrently. Conversely, plea counsel requested that Ventimiglia be given the opportunity to complete the long-term drug treatment program. Plea counsel noted that Ventimiglia had been screened and deemed to qualify for the drug court program. Plea counsel alternatively requested a ten-year prison sentence. The trial court sentenced Ventimiglia to a total of twenty years' imprisonment.

The trial court explained Ventimiglia's rights under Rule 24.035. When asked whether he understood, Ventimiglia initially stated "I thought I could take these cases to trial if I got 20 years... I didn't know I was going to be sentenced to 20 years." The trial court reminded

5

Ventimiglia of his extensive testimony to the contrary at the plea hearing and further explained Rule 24.035 in detail. Ventimiglia indicated he understood his rights under Rule 24.035.

Finally, the trial court asked Ventimiglia a series of questions concerning plea counsel's assistance. Ventimiglia confirmed that he had enough time to discuss his case fully with plea counsel before pleading guilty, that he believed plea counsel represented him to the best of her ability, and that plea counsel answered all of his questions. Ventimiglia additionally stated that plea counsel did what he asked her to do and fully explained his rights to him. The trial court then had the following exchange with Ventimiglia regarding plea counsel's performance:

> Trial Court: Do you think she's done a good job for you? Of course I recall that [plea counsel] actually convinced the drug court to accept you into drug court.
>
> Ventimiglia: Yes, sir.
>
> Trial Court: She asked the Probation and Parole [to] screen you for [the] long-term drug treatment program. You understand she's done that for you? The Court rejected those options. Has your attorney made any threats or promises to you to get you to plead guilty?
>
> Ventimiglia: No, sir.
>
> Trial Court: Do you have any complaints with your attorney?
>
> Ventimiglia: No, sir.
>
> Trial Court: Is there anything else you want to tell me about your attorney's representation before I decide whether or not I believe you've received effective assistance of counsel?
>
> Ventimiglia: No, sir.

The trial court found that Ventimiglia had been informed of and understood his rights under Rule 24.035, and found no probable cause to believe that Ventimiglia received ineffective assistance of counsel.

6

Ventimiglia subsequently filed a *pro se* Rule 24.035 motion for post-conviction relief. Appointed counsel filed an amended motion alleging that plea counsel was ineffective, rendering Ventimiglia's guilty plea involuntary and unknowing, in that plea counsel (1) assured Ventimiglia he would be sentenced to the long-term drug treatment program if he entered blind guilty pleas on all counts in both cases against him, and (2) pressured Ventimiglia to plead guilty even though he wanted to proceed to trial. Ventimiglia also requested an evidentiary hearing.

In support of his first allegation of ineffective assistance, Ventimiglia claimed that based on his conversations with plea counsel, Ventimiglia reasonably believed he would be sentenced to the long-term drug treatment program upon entering a blind guilty plea. Ventimiglia maintained that he entered a guilty plea "because he truly believed he would be sentenced to the long-term treatment program." Ventimiglia insisted that although he told the trial court no one had promised him a particular sentence to induce his guilty plea, he nevertheless believed that he would be sentenced to the long-term drug treatment program. In support of his second allegation of ineffective assistance, Ventimiglia asserted that he discussed with plea counsel his desire not to plead guilty to one charge of second-degree robbery and one charge of second-degree burglary. Ventimiglia alleged that, prior to advising him to plead guilty, plea counsel had not filed any motions or taken any depositions in preparation for trial or discussed the strengths and weaknesses of the case with Ventimiglia. Ventimiglia maintained that after plea counsel told him he could not win his cases, he reluctantly followed her advice and pleaded guilty because he felt pressured, believing he had no other choice because plea counsel was not willing to "fight for him."

On July 16, 2014, the motion court entered its Findings of Fact, Conclusions of Law and Order denying Ventimiglia's amended motion without an evidentiary hearing. The motion court

7

concluded Ventimiglia's first claim was without merit, reasoning there was "no basis in the record for [Ventimiglia] to have believed he would be sentenced to the long-term drug treatment [program] if he pleaded guilty." The motion court noted that the trial court "could not have made it more clear, prior to the acceptance of the pleas, that [Ventimiglia] was not assured of such a disposition even if the sentencing assessment report recommended his placement in the program and even if he was accepted into the program." The motion court also found Ventimiglia's second claim to be refuted by the record and without merit, reasoning that Ventimiglia told the trial court he had no complaints against plea counsel and plea counsel had fully explained his rights and done everything he asked her to do. The motion court noted that "[c]ounsel is not ineffective for advising his client of the strength of the state's case and that conviction is likely, and where, as a result of the counsel's advice, the movant pleads guilty." This appeal follows.

## Points on Appeal

Ventimiglia presents two points on appeal, each asserting that the motion court erred in denying his Rule 24.035 motion for post-conviction relief without an evidentiary hearing. First, Ventimiglia contends that plea counsel rendered ineffective assistance of counsel by assuring Ventimiglia if he entered blind guilty pleas on all counts in both cases against him, the trial court would sentence him to the long-term drug treatment program pursuant to Section 217.362. Ventimiglia maintains that plea counsel's ineffective assistance rendered his guilty plea involuntary, unknowing, and unintelligent, and that he would not have pleaded guilty had he known the trial court would not sentence him to the long-term drug treatment program. Second, Ventimiglia avers that plea counsel rendered ineffective assistance by pressuring Ventimiglia to plead guilty, due to her own lack of preparation, even though Ventimiglia wanted to proceed to

8

trial. Ventimiglia maintains that plea counsel's ineffective assistance rendered his guilty plea involuntary, unknowing, and unintelligent. Ventimiglia argues that the facts alleged in his motion for post-conviction relief are not refuted by the record, thereby mandating an evidentiary hearing on his claims.

## Standard of Review

Appellate review of the denial of a Rule 24.035 motion is limited to a determination of whether the motion court's findings, conclusions, and judgment are clearly erroneous. Wooldridge v. State, 239 S.W.3d 151, 153-54 (Mo. App. E.D. 2007). The motion court's findings and conclusions are presumptively correct and will be overturned only when this court, after reviewing the entire record, is left with a "definite and firm impression that a mistake has been made." Vaca v. State, 314 S.W.3d 331, 334 (Mo. banc 2010). After a guilty plea, our review is limited to a determination of whether the movant's plea was knowing and voluntary. Loudermilk v. State, 973 S.W.2d 551, 553 (Mo. App. E.D. 1998).

Moreover, to be entitled to an evidentiary hearing on a post-conviction relief claim, a movant must (1) allege facts, not conclusions, that, if true, would warrant relief; (2) the facts alleged must raise matters not refuted by the record and files in the case; and (3) the matters complained of must have resulted in prejudice to the movant. Barnett v. State, 103 S.W.3d 765, 769 (Mo. banc 2003). An evidentiary hearing is not required if the files and records of the case conclusively show that the movant is entitled to no relief. Id. Where a movant alleges ineffective assistance of counsel following a guilty plea, "[i]f an examination of the guilty plea proceedings directly refute that movant's plea was involuntary, movant is not entitled to an evidentiary hearing." Cain v. State, 859 S.W.2d 715, 717 (Mo. App. E.D. 1993).

9

<u>Discussion</u>

In order to prevail on a claim of ineffective assistance of counsel, a movant must show by a preponderance of the evidence (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that he was prejudiced thereby. <u>Sanders v. State</u>, 738 S.W.2d 856, 857 (Mo. banc 1987) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). When a claim of ineffective assistance of counsel follows a guilty plea, the claim of ineffective assistance is "immaterial except to the extent it impinges on the voluntariness and knowledge with which a [movant] pled guilty." <u>Cain</u>, 859 S.W.2d at 717. Prejudice exists if the movant can show that, but for counsel's ineffective assistance, he would have not pleaded guilty and instead would have insisted upon going to trial. <u>May v. State</u>, 309 S.W.3d 303, 306 (Mo. App. E.D. 2010).

In the context of a guilty plea, analysis of an ineffective assistance of counsel claim is limited to whether the alleged ineffective assistance impinged on the defendant's ability to make a knowing and voluntary plea of guilty. <u>Evans v. State</u>, 921 S.W.2d 162, 164 (Mo. App. W.D. 1996). In other words, in order to prevail on an ineffective assistance of counsel claim following a guilty plea, a movant "must establish a serious dereliction of duty that materially affected his substantial rights and further show that his guilty plea was not an intelligent or knowing act." <u>Id.</u>

**I. Point One – Drug Treatment Program**

Ventimiglia's first point on appeal focuses on his allegation that plea counsel assured him that the trial court would sentence him to the long-term drug treatment program if he entered a blind guilty plea. Ventimiglia maintains that plea counsel's assurances rendered his guilty plea involuntary and that the motion court erred in denying his Rule 24.35 motion without an evidentiary hearing. We are not persuaded.

10

Following a guilty plea, ineffective assistance of counsel is only relevant to the extent it affects the voluntariness of a movant's plea. Ventimiglia is not entitled to an evidentiary hearing if an examination of the guilty plea proceedings directly refutes that his plea was involuntary. Cain, 859 S.W.2d at 717. Further, where a movant claims a mistaken belief about a sentence, the relevant test is whether there is a reasonable basis in the record to support that belief. Allen v. State, 403 S.W.3d 678, 680-81 (Mo. App. E.D. 2013). Mistaken beliefs about sentencing may affect a movant's ability to knowingly enter a plea of guilty, but only if the belief is reasonable and is based upon a positive representation upon which the movant is entitled to rely. Jenkins v. State, 9 S.W.3d 705, 708 (Mo. App. S.D. 1999).

Here, the plea and sentencing hearing transcripts directly refute Ventimiglia's assertion that his guilty plea was involuntary. To the contrary, Ventimiglia's responses to the trial court's numerous and specific inquiries demonstrate that his guilty plea was made voluntarily and with a full understanding of the attendant consequences, which included the possibility of long-term incarceration. The trial court explained that the purpose of the SAR was to assist the court in determining whether to sentence Ventimiglia to prison or to place him on probation or in a drug treatment program. The trial court also explicitly asked Ventimiglia whether he understood that it was "entirely up to [the trial court]" to decide whether he would be sentenced to prison or placed on probation following receipt of the SAR. Ventimiglia not only confirmed he understood this, but also stated he understood that even if the SAR recommended probation or drug treatment, the trial court was not required to follow that recommendation and could still sentence Ventimiglia to prison. In addition to these statements, Ventimiglia plainly and clearly denied that anyone had promised that he would receive probation or any certain sentence if he pleaded guilty. Ventimiglia openly confirmed that he understood he could not "take back" his

11

guilty plea should the trial court decide not to place him on probation or in a drug program, but instead sentence him to prison. Ventimiglia also stated that no threats or promises had been made to him to induce his guilty plea, a statement he repeated at the sentencing hearing. Ventimiglia additionally confirmed that he understood the constitutional rights he was giving up by pleading guilty, and assured the trial court, before entering his plea, that he was doing so voluntarily and of his own free will.

Our review of the plea hearing and sentencing transcripts reveals there was no reasonable basis in the record for Ventimiglia to believe he was in any way guaranteed that he would be sentenced to the long-term drug treatment program if he pleaded guilty. We agree with the conclusion reached by the motion court – that the trial court "could not have made it more clear, prior to the acceptance of the pleas, that [Ventimiglia] was not assured of such a disposition even if the sentencing assessment report recommended his placement in the program and even if he was accepted into the program." The record unequivocally reflects that Ventimiglia understood this stark reality prior to entering his guilty plea. The trial court specifically explained to Ventimiglia that the purpose of obtaining an SAR was to assist the court in deciding whether to sentence Ventimiglia to prison *or* to probation and drug treatment. The trial court also explained, and Ventimiglia confirmed he understood, that the sentencing decision was "entirely up to [the trial court]." Finally, Ventimiglia explicitly stated he understood the trial court could choose to sentence him to prison rather than the drug treatment program, even if the SAR report recommended such a sentence and even if the program accepted him. We find nothing in the record supporting a conclusion that Ventimiglia's belief that he would be sentenced to the long-term drug treatment program upon pleading guilty was reasonable. Instead, the record clearly

12

reflects that Ventimiglia understood the trial court retained complete discretion to decide his sentence, with no particular sentence guaranteed to him.

The guilty plea proceedings directly refute both Ventimiglia's claim that his plea was involuntary and his claim that he reasonably believed he would be sentenced to the long-term drug treatment program if he pleaded guilty. Accordingly, Ventimiglia was not entitled to an evidentiary hearing on his claim of ineffective assistance of counsel and the motion court did not clearly err in denying his Rule 24.035 motion without an evidentiary hearing. Point One is denied.

## II. Point Two – Pressure to Plead Guilty

Ventimiglia contends in Point Two that plea counsel was ineffective when, due to her own lack of preparation, she pressured Ventimiglia to plead guilty when Ventimiglia wanted to proceed to trial. Ventimiglia maintains that plea counsel's conduct in pressuring him to plead guilty rendered his guilty plea involuntary and that the motion court erred in denying his Rule 24.035 motion without an evidentiary hearing. We disagree.

Again, when a movant enters a guilty plea, a claim of ineffective assistance of counsel is relevant only to the extent it affects the voluntariness of a movant's plea. Ventimiglia is therefore not entitled to an evidentiary hearing if an examination of the guilty plea proceedings directly refutes that his plea was involuntary. Cain, 859 S.W.2d at 717. "Statements made by the defendant during sentencing refute ineffective assistance of counsel claims if the questions and responses are 'specific enough to refute conclusively the movant's allegations.'" Johnson v. State, 921 S.W.2d 48, 51 (Mo. App. W.D. 1996) (quoting State v. Driver, 912 S.W.2d 52, 56 (Mo. banc 1995)).

13

Here, Ventimiglia's responses to the specific inquiries posed by the trial court at both the plea and sentencing hearings directly refute Ventimiglia's claim that his guilty plea was involuntary due to pressure from plea counsel for Ventimiglia to plead guilty. Ventimiglia consistently assured the trial court that plea counsel had rendered satisfactory representation, and repeatedly confirmed that he was pleading guilty voluntarily and with a full understanding of the charges against him and the legal effect of his guilty plea. At both the plea and sentencing hearings, Ventimiglia confirmed that he had sufficient time to discuss the charges with plea counsel; that plea counsel had explained his legal rights to him and answered all of his questions; that plea counsel did everything he asked her to do; and that he had no complaints about plea counsel and was satisfied with her representation. Additionally, Ventimiglia stated that no threats or promises had been made to induce him to plead guilty and assured the trial court that he was entering his guilty plea voluntarily and of his own free will. Ventimiglia also confirmed at the plea hearing that he understood his constitutional rights, including the right to trial, and understood he was giving up those rights by virtue of pleading guilty. We further note that Ventimiglia repeated his satisfaction with counsel's effort and conduct in representing him at the sentencing hearing, after Ventimiglia learned he had been denied probation and entry into a drug treatment program and sentenced to twenty years in prison.

The guilty plea proceedings directly refute Ventimiglia's claim that his plea was rendered involuntary as a result of plea counsel's pressure and conduct. Accordingly, Ventimiglia was not entitled to an evidentiary hearing on his claim of ineffective assistance of counsel and the motion court did not clearly err in denying his Rule 24.035 motion without an evidentiary hearing. Point Two is denied.

14

## Conclusion

The judgment of the motion court is affirmed.

KURT S. ODENWALD, Judge

Sherri B. Sullivan, P.J., concurs.
Patricia L. Cohen, J., concurs.