**James Milborn WEST, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–Respondent.**

**No. 25771.**

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 26, 2005.

Application for Transfer Denied
March 23, 2005.

Application for Transfer Denied
April 26, 2005.

John William Simon, Clayton, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, for respondent.

NANCY STEFFEN RAHMEYER, Judge.

James Milborn West ("Movant") pled guilty to the class A felony of assault in the first degree, a violation of section 565.050 [1]; he was sentenced to serve seventeen years in the Missouri Department of Corrections. Movant timely filed a motion pursuant to Rule 24.035.[2] The motion was overruled and this appeal follows.

In his first point, Movant contends his plea counsel ("Counsel") denied him effective assistance of counsel by failing to properly prepare the mental health defense of diminished capacity and, because of this failure, Movant was forced to enter a guilty plea. Movant claims he only pled guilty because he was forced to choose between pleading guilty, going to trial without a prepared defense of diminished capacity, or going to trial pro se without the diminished capacity defense. Movant's first point on appeal relies on a foundation of testimony at the evidentiary hearing that Movant suffered from brain damage and related mental retardation which substantially impaired his ability to respond to a stressful situation on the night of the assault and, therefore, he had a diminished capacity defense available to him at trial. During his evidentiary hearing, Movant presented the testimony of a forensic psychiatrist, Dr. Bruce Harry, who concluded, after reviewing a number of Movant's records and conducting his own tests, that Movant suffered from a mental defect that diminished his capacity to act with "awareness." Movant also presented testimony during the hearing of family members who were familiar with the injuries from his previous accidents.

■■■■ Our review of the denial of a post-conviction motion is limited to a determination of whether the findings of fact and conclusions of law of the motion court are clearly erroneous. *Smith v. State*, 28 S.W.3d 417, 419 (Mo.App. S.D.2000). The motion court's findings are deemed clearly erroneous if, after a review of the entire record, we are left with a firm and definite impression that a mistake has been made. *Id.* In order to prevail on his claim under Rule 24.035, Movant has the burden of proving his claim of ineffective assistance of counsel by a preponderance of the evidence. *Dillard v. State*, 137 S.W.3d 483, 486 (Mo.App. S.D.2004). In the absence of a showing to the contrary, counsel is presumed to have provided effective assistance to Movant. *Peet v. State*, 22 S.W.3d 792, 794 (Mo.App. S.D.2000). The presumption is that the challenged action was sound trial strategy. *Eichelberger v. State*, 134 S.W.3d 790, 792 (Mo.App. W.D. 2004). Movant's conviction was a result of a guilty plea; his claim of ineffective assistance of counsel is material only if it affects the voluntary and intelligent character of the plea. *Risalvato v. State*, 856 S.W.2d 370, 373 (Mo.App. W.D.1993).

At the evidentiary hearing, the motion court was presented with the diametrically opposed testimony of Movant and Counsel. Movant claimed that on December 25, 2000, when his wife ("Victim") admitted that she had an affair with two different men, he "went berserk" and, while under the influence of drugs and alcohol, administered numerous kicks and blows to Victim's head and body. Although he stated that he quit when he saw what he had

---

1. All references to statutes are to RSMo 2000, unless otherwise indicated.

2. All rule references are to Supreme Court Rules (2003), unless otherwise stated.

done and that the beating only lasted ten to fifteen minutes, on cross-examination he was evasive about what occurred after the beating. In fact, he was evasive during most of the cross-examination, even concerning whether he had taken an oath to tell the truth at the guilty plea hearing. He also claimed that Counsel told him to lie at that hearing when asked about her job performance.

Movant admitted that he accepted the plea agreement, which called for a seventeen-year sentence, but only because Counsel told him he would probably get thirty years if he went to trial. He now claims that Counsel was actually working for the prosecution. After doing research in the prison library, he was informed in "black and white" of a bonus system in which prosecutors and public defenders work together to receive a bonus for each conviction. When questioned about this system, Movant again lost his memory and became evasive; however, he did state that his law research convinced him that he would have gotten a much shorter sentence had he taken his chances with a jury, who would have been told of a "sudden passion" defense.

On the other hand, Counsel testified at the evidentiary hearing that she did not pursue a diminished capacity defense because Movant insisted, up until the time of the plea, that he did not commit the assault and that some other individual injured Victim. Counsel prepared an alibi defense, which Movant's family supported, because Movant claimed an alibi. In preparation for trial, Counsel interviewed most of the family members, neighbors and the Victim outside the presence of her family. Movant and his family claimed that the charges were all a conspiracy against him and that he was set up by Victim's family in a "Hatfield–McCoy" family dispute. The alibi defense was not entirely implau-

sible in that Victim initially claimed to have been attacked by two women who came to her door and there was a long-standing dispute between the families of Movant and Victim.

Counsel initiated the discussion of mental health issues in letters to Movant early in the case after a discussion with Victim about Movant's previous accidents. She had doubts about Movant's truthfulness concerning his denial of the assault after private discussions with Victim, but told him that his defense was entirely his choice. Counsel testified that she repeatedly discussed possible defenses with Movant, including mental health and sudden passion defenses; in addition, she obtained several continuances from the court to investigate Movant's mental health issues. Counsel emphasized to Movant the difference between mental health issues and a mental health defense. She told him that with a mental health defense he would have to take the stand and even role-played with Movant by asking him questions as if she were the prosecutor. Specifically, she told him that a jury might not accept his defense that he did not commit the crime.

Movant chose to proceed on the theory that he was being framed by Victim's family, who had themselves committed the assault against Victim. Because Movant would not admit to committing the offense, Counsel could not use the mental health defense of diminished capacity. Based upon Movant's decision and his denial of committing the assault, Counsel did not hire a mental health expert nor did she secure further services in that line of defense.

The motion court found that Movant stated under oath that his plea was entered freely, voluntarily, and of his accord, that he was satisfied with the representation of [his counsel], that she had

done the things that he had asked, that she had not failed to do the things he asked, that she had been available when he needed to talk and that she had counseled with Movant about the criminal proceedings.

The motion court also found that statements made to the contrary as to Counsel's performance were not credible because Movant admitted that he would lie under oath to "get what he want[ed]." The court noted the banker's box full of documents which Counsel used to prepare a defense for Movant and the pleading listing six alibi witnesses that was filed with the court which supported Counsel's claim that she pursued an alibi defense.

The court further noted that none of the witnesses called by Movant supported Dr. Harry's conclusions that Movant lost the ability to control his impulses or that he encountered difficulty in evaluating the consequences of his behavior as theorized by Dr. Harry. In fact, Dr. Harry did not speak with Movant's family members, coworkers, police who investigated the assault, the Victim, or anyone familiar with the circumstances of the events which occurred in December 2000, other than Movant. The court noted that Dr. Harry provided no reasonable explanation concerning Movant's behavior, which included fleeing the scene of the crime and failing to call for medical assistance for Victim or to file a police report, that would be consistent with his theory that Movant was unable to understand the consequences of his actions. Thus, Movant's motion to vacate, set aside, or correct judgment and sentence was overruled by the motion court. We do not have a firm and definite opinion that a mistake has been made nor that the findings of the motion court are clearly erroneous.

■ Appellate courts give due regard to a motion court's opportunity to assess the credibility of witnesses who appeared before it. *Bates v. State*, 967 S.W.2d 683, 683 (Mo.App. S.D.1998). The motion court is entitled to believe or disbelieve any or all of the testimony of any witness. *Id.* at 684. This Court, therefore, will defer to the motion court's determination of witness credibility. *Waters v. State*, 128 S.W.3d 648, 652 (Mo.App. S.D.2004). The motion court was free to believe Counsel that she prepared the defense that Movant chose, especially since the record supports the naming of numerous alibi witnesses. The court also believed that Counsel alerted Movant to various possible defenses, including a diminished capacity defense, that were available if he would admit to the assault. Counsel even requested continuances to further investigate a possible defense of diminished capacity.

Furthermore, a review of the entire transcript of the evidentiary hearing indicates that Movant's credibility was suspect even within the evidentiary hearing itself. Movant contradicted himself and made conspiracy allegations against all law enforcement personnel. Movant contended that Counsel actually worked for the prosecution in a quota system that gave bonuses for felony convictions. When pressed on where he received his information for his various accusations, Movant again became vague in his answers.

We also note the discrepancy in Movant's testimony at the evidentiary hearing concerning the beating, which he claimed could not have lasted more than ten to fifteen minutes, and the extent of the injuries to Victim. Victim received a broken rib, had a chest tube inserted for fluid in the lungs for a collapsed lung, was bruised throughout her body, and sustained a cut to her carotid artery which subsequently caused a stroke. Victim's testimony at the guilty plea hearing described a bullying husband who beat her throughout the mar-

riage, called her children names, and constantly accused her of doing things she had not done. There is no question that despite Victim's massive injuries, Movant left Victim alone for at least a day after the incident without seeking any medical care for her. Movant admitted that he did not seek medical care because he knew he would be in trouble.

At the guilty plea hearing, Movant was asked about his mental health. He described two car accidents, including one in which he suffered a closed head injury. He also testified that he had seen a psychiatrist in the past, but he was not diagnosed with a mental disease or defect. Movant affirmatively expressed that he was satisfied with Counsel's representation, that she had done what he had instructed her to do. He stated that Counsel had not failed in any respect, had been available to him, and responded when he needed her to do so. At the conclusion of the guilty plea proceedings, Movant again asserted that he had sufficient opportunity to discuss his case with Counsel and declined to speak about Counsel's services, even when the court gave him opportunity to do so without Counsel present. We find no error in the trial court's determination that Movant failed to meet his burden of proof that his plea was involuntary and unknowing because Counsel failed to prepare a proper mental health defense. Movant's first point is denied.

Movant's second point is not a model of clarity. We actually cannot discern what error Movant has attempted to claim. At first blush, it appears that Movant claims the sentencing judge erred in denying the post-conviction relief claim because it was the same judge that caused him to receive ineffective assistance of counsel by denying him a continuance to hire private counsel. Movant did not request a continu-

ance, nor did he hire independent counsel. He simply asked for a different public defender at a pretrial hearing prior to the trial date. The court explained the lack of its authority in the assignment of public defenders. We find no error in the dialogue between the court and Movant.

■ If Movant intends by his point to argue that the trial court erred by not allowing him to obtain private counsel[3], then a 24.035 motion is the wrong vehicle to assert such claims. The Missouri Supreme Court has stated that, "Rule 24.035 is the exclusive method of appeal *only as to the grounds enumerated within the rule*. All other grounds are excluded from the rule by omission." *Brown v. State*, 66 S.W.3d 721, 728 (Mo. banc 2002). Rule 24.035 sets forth the claims by which Movant may seek relief. These claims are, "ineffective assistance of trial and appellate counsel, that the court imposing the sentence was without jurisdiction to do so, or that the sentence imposed was in excess of the maximum sentence authorized by law." Rule 24.035. Neither the alleged failure to grant a continuance, nor the alleged failure to allow substitute counsel are cognizable in a post-conviction motion. Point II is denied. The judgment is affirmed.

GARRISON, P.J., and PREWITT, J., concur.

---

**3.** We note that Movant does not claim that he

actually hired private counsel.