

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| RONALD TAYLOR, | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD78411 |
| | ) | |
| STATE OF MISSOURI, | ) | FILED: August 23, 2016 |
| Respondent. | ) | |
| | ) | |

**Appeal from the Circuit Court of Clinton County
The Honorable Daren L. Adkins, Judge**

**Before Division Four: Alok Ahuja, P.J., and Thomas H. Newton
and Anthony Rex Gabbert, JJ.**

Appellant Ronald Taylor pleaded guilty to three charges of burglary in the second degree under § 569.170,[1] based on break-ins at three school buildings in Plattsburg in July 2009. Taylor was sentenced to three consecutive seven-year sentences, and placed on probation. After his probation was revoked and the sentences executed, Taylor moved for post-conviction relief under Supreme Court Rule 24.035. Taylor's amended Rule 24.035 motion alleged that his guilty pleas were involuntary because they were coerced by the State's initial filing of charges of burglary in the first degree, for which the prosecution lacked probable cause. Taylor also contended that his appointed plea counsel was incompetent for failing to advise Taylor of the lack of a factual basis to support the first-degree burglary charges, or to otherwise challenge those charges.

---

[1] Unless otherwise indicated, statutory citations refer to the 2000 edition of the Revised Statutes of Missouri, as updated through the 2008 Cumulative Supplement.

The circuit court denied relief without conducting an evidentiary hearing. Because we conclude that Taylor's amended postconviction relief motion alleged facts which would entitle him to relief, and which were not conclusively refuted by the record, we reverse, and remand to the circuit court for an evidentiary hearing on Taylor's claims.

## Background

Taylor's convictions stem from break-ins at a Plattsburg elementary school, middle school, and high school on the morning of Sunday, July 5, 2009. Property was damaged or stolen at each location. Taylor was arrested after he attempted to sell property taken from the high school to a confidential informant.

Taylor was initially charged by information in separate cases with three counts of burglary in the first degree under § 569.160. Burglary in the first degree is a Class B felony. § 569.160.2. Under the statutes then in effect, Class B felonies were punishable by a term of imprisonment "not less than five years and not to exceed fifteen years." § 558.011.1(2).

Pursuant to a plea agreement, the State agreed to amend the three charges to burglary in the second degree under § 569.170. Burglary in the second degree is a Class C felony, § 569.170.2, which at the time was punishable by imprisonment for "a term of years not to exceed seven years." § 558.011.1(3).

On January 8, 2010, Taylor pleaded guilty to three counts of burglary in the second degree. At his sentencing hearing, the prosecution asked the court to impose the maximum sentence of seven years on each count, and to run the sentences consecutively to one another.[2] The circuit court followed the State's

---

[2]     It appears that the prosecutor's advocacy of maximum sentences on each count violated the terms of the parties' written plea agreement. A written one-page "Memorandum of Plea Bargain," signed by Taylor, his counsel, and an assistant prosecutor, states that the prosecution will **TAKE[ ] NO POSITION ON LENGTH OF SENTENCE**." And at his guilty-plea hearing, the court explained to Taylor that, under the plea agreement, the State would "stand silent regarding the range of punishment." Taylor did

2

recommendation, and sentenced Taylor to seven years' imprisonment – the maximum authorized sentence – on each count, with the sentences ordered to run consecutively. Execution of the sentences was suspended and Taylor was placed on probation.

The circuit court revoked Taylor's probation and executed the sentences on October 5, 2012. Following the revocation of his probation, Taylor moved for postconviction relief under Supreme Court Rule 24.035. The Amended Motion filed by appointed counsel contends that Taylor's guilty pleas were coerced and involuntarily because the prosecutor initially charged and threatened Taylor with prosecution for burglary in the first degree, even though the prosecutor lacked probable cause for the first-degree burglary charges. Taylor further alleged that the pleas were coerced and involuntary due to the ineffective assistance of his plea counsel, who failed to advise Taylor of the lack of a factual basis for the first-degree burglary charges, and failed to investigate or challenge the initial charges before advising Taylor to accept the plea agreement. Taylor alleged that he would not have pleaded guilty, but would have insisted on going to trial, were it not for prosecution's initial filing of the baseless first-degree burglary charges, and his counsel's incompetent response to those charges.

The Circuit Court of Clinton County denied the Amended Motion without an evidentiary hearing. The motion court concluded that Taylor's allegations were refuted by the record. It explained:

> The record in this case shows that Movant specifically denied that he had been threatened or coerced into pleading guilty. Specifically, during his guilty plea, Movant was questioned by the Court as to the voluntariness of his plea and the assistance of his counsel, including whether Movant had "been threatened or coerced in any manner to

not raise any claim concerning the prosecution's apparent breach of the plea agreement in his amended postconviction relief motion or on appeal, however, and "there is no plain error review in an appeal from a post-conviction judgment for a claim that was not presented in the post-conviction motion." *Mallow v. State*, 439 S.W.3d 764, 769-70 (Mo. banc 2014).

3

cause [him] to plead guilty[, including a] . . . threat of further prosecution, dismissal of other charges, or anything that is not now before the Court." The record shows that Movant gave no answers to the Court indicating that his plea was anything other than voluntary, or that he was in any way dissatisfied with his counsel. The record refutes Movant's allegations that he was coerced to plead guilty through the threat of additional or allegedly improper charges, so Movant is not entitled to a hearing on his claims.

(Record citation omitted.)

Taylor appeals.

## Discussion

### I.

Before addressing the merits of Taylor's claims on appeal, we are required to determine whether his Amended Motion for postconviction relief was timely filed. *See*, *e.g.*, *Childers v. State*, 462 S.W.3d 825, 827 (Mo. App. E.D. 2015) (citing *Moore v. State*, 458 S.W.3d 822 (Mo. banc 2015)).

The State argues that the Amended Motion was filed a day late, and that the case must therefore be remanded to the motion court to determine whether Taylor was abandoned by post-conviction counsel or instead whether the untimely filing was Taylor's fault. We disagree.

Taylor initially filed a timely *pro se* motion for postconviction relief on January 11, 2013. Counsel was appointed to represent him on January 17, 2013. Taylor's guilty plea and sentencing transcripts were filed in the circuit court on April 15, 2013. With a 30-day extension which was granted at the request of appointed counsel, Taylor's amended Rule 24.035 motion was due on July 14, 2013.

On July 19, 2013, Taylor's counsel filed a motion confessing his abandonment of Taylor due to counsel's failure to file a timely amended motion. Counsel asserted that his abandonment was caused by his failure to calendar the due date for the amended motion. Counsel requested that the motion court find that Taylor had

4

been abandoned, re-appoint counsel, and permit him additional time within which to file an amended motion.

On July 22, 2013, the motion court granted counsel's motion, found that Taylor had been abandoned, and re-appointed counsel to represent Taylor. The Court's July 22, 2013 order "ORDERED that Movant file his amended motion for post-conviction relief within ninety days of the date of counsel's reappointment."

The 90th day following the July 22, 2013 order was Sunday, October 20, 2013. Accordingly, the State and Taylor agree that the Amended Motion was due on Monday, October 21, 2013. *See* Rule 44.01(a). The motion court's judgment states that the Amended Motion was filed on October 22, 2013 – one day beyond the deadline specified in the court's July 22, 2013 order. Further, the Clerk's file stamp indicates that the Amended Motion was filed on October 22. Based on these facts, the State argues that the Amended Motion was untimely, necessitating that the case be remanded to the motion court for an abandonment inquiry.

What the State neglects, however, is that the copy of the Amended Motion in the circuit court's file bears a facsimile transmission time stamp indicating that it was received by the court at 3:27 p.m. on October 21, 2013 – the date the Motion was due. The Forty-Third Circuit's Local Rule 3.3 in effect in October 2013 states:

> Facsimile transmissions of pleadings are permissible in any situation. No filing by facsimile shall be processed by the clerks until the appropriate filing fees have been received.
>
> Time of receipt of any pleading shall be governed by the time affixed on the facsimile transmission and shall be filed accordingly, if the appropriate filing fees have been received.

No filing fees were due with the Amended Motion. Because it was received by the circuit court by facsimile transmission during business hours on October 21, 2013, the Amended Motion was timely filed. As a result, there was no need for the

motion court to conduct an abandonment inquiry, and we proceed to the merits of Taylor's arguments on appeal.[3]

## II.

"Review of the denial of a post-conviction motion under Rule 24.035 is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous." *Dodson v. State*, 364 S.W.3d 773, 776 (Mo. App. W.D. 2012). "The motion court's findings and conclusion are clearly erroneous only if, after review of the record, the appellate court is left with the definite and firm impression that a mistake has been made." *Id.*

The circuit court denied Taylor relief on his postconviction relief motion without conducting an evidentiary hearing. "To show he was entitled to an evidentiary hearing on his Rule 24.035 motion, Movant must show that (1) he alleged facts, not conclusions, warranting relief; (2) the facts alleged raise matters not refuted by the files and record of his case; and (3) the matters complained of resulted in prejudice to him." *Roberts v. State*, 276 S.W.3d 833, 835 (Mo. banc 2009). Regarding the second requirement, "an evidentiary hearing may only be denied when the record conclusively shows that the movant is not entitled to relief." *Id.* "In reviewing the motion court's dismissal [of a Rule 24.035 motion without an evidentiary hearing], this Court is required to assume every pled fact as true and give the pleader the benefit of every favorable inference which may be reasonably drawn therefrom." *Wooldridge v. State*, 239 S.W.3d 151, 154 (Mo. App. E.D. 2007).

## A.

In his Amended Motion, Taylor alleged that his guilty pleas were not knowing and voluntary because the State initially charged him with offenses for

---

[3] The State's appellate brief addresses only the timeliness issue. We therefore address the merits of Taylor's postconviction relief motion without the benefit of any argument by the State.

which it lacked probable cause, and his counsel failed to advise him of that fact, or challenge the factually unfounded charges. If true, those allegations would warrant a finding that Taylor's guilty pleas were involuntary, and that he should be entitled to withdraw them.

A defendant must enter a guilty plea knowingly and voluntarily. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). In its seminal decision in *Bordenkircher v. Hayes*, 434 U.S. 357 (1978), the Supreme Court of the United States held that a defendant could enter a voluntary guilty plea even though prosecutors threatened the defendant with charges carrying greater punishment, or offered to reduce charges, during plea negotiations. The Court stressed, however, that its endorsement of these practices depended on the fact that the prosecution had a good-faith basis for the harsher charges. The Court explained:

> Plea bargaining flows from "the mutuality of advantage" to defendants and prosecutors, each with his own reasons for wanting to avoid trial. Defendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choice in response to prosecutorial persuasion, and unlikely to be driven to false self-condemnation. Indeed, acceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process. By hypothesis, the plea may have been induced by promises of a recommendation of a lenient sentence or a reduction of charges, and thus by fear of the possibility of a greater penalty upon conviction after a trial.

> While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices is an inevitable – and permissible – attribute of any legitimate system which tolerates and encourages the negotiation of pleas. It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.

> ***It is not disputed here that Hayes was properly chargeable under the recidivist statute*** [which the prosecution had threatened to invoke during plea negotiations], since he had in fact been convicted of two previous felonies. In our system, ***so long as the prosecutor has***

7

> *probable cause to believe that the accused committed an offense defined by statute*, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.

*Id.* at 363-64 (emphasis added; citations and internal quotation marks omitted). As we explained in *State v. Sapien*, 337 S.W.3d 72 (Mo. App. W.D. 2011), "*[a]s long as the charges are supported by probable cause*, a prosecutor can raise the prospect of enhanced or additional charges in order to induce a guilty plea, just as the prosecutor can bring such charges at the outset and offer to reduce or drop them." *Id.* at 80 (emphasis added); *see also, e.g.*, *State v. Molinett*, 876 S.W.2d 806, 809 (Mo. App. W.D. 1994) (citing *Bordenkircher*; "If the state has probable cause to believe that the accused committed a crime as defined by statute, the decision whether or not to prosecute and what charges to file generally rests entirely within the prosecutor's discretion.").[4]

---

[4] In a related context, courts have held that a defendant's guilty plea may be rendered involuntary where it is based on prosecutorial threats to prosecute other individuals (often family members), and the prosecution lacks probable cause to charge the third parties. *See, e.g.*, *United States v. Howard*, 549 Fed. Appx. 164, 167 (4th Cir. 2013) (where defendant claimed that his plea was involuntarily induced by prosecution's threat to prosecute his mother, defendant "was charged with showing that there was no probable cause to charge his mother with a crime"); *United States v. Vest*, 125 F.3d 676, 680 (8th Cir. 1997) ("A plea agreement containing . . . a condition [that another individual would be permitted to plead guilty and avoid the death penalty only if defendant pleaded guilty] is proper so long as the government acts in good faith based upon probable cause to file charges against or to prosecute the third party named in the agreement."); *Miles v. Dorsey*, 61 F.3d 1459, 1468 (10th Cir. 1995) ("The government acts in good faith when it offers leniency for an indicted third party or threatens to prosecute an unindicted third party in exchange for a defendant's plea when the government has probable cause to prosecute the third party."); *United States v. Wright*, 43 F.3d 491, 499 (10th Cir. 1994) ("To lawfully threaten third persons with prosecution during the course of plea negotiations, the government must have probable cause that those third persons committed the crime that the government threatens to charge.").

Missouri's ethical rules have long prohibited prosecutors from filing charges for which they lack probable cause. Supreme Court Rule 4-3.8(a), part of the current Rules of Professional Conduct, instructs that "[t]he prosecutor in a criminal case shall . . . refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause." Predecessor rules contained a similar prohibition. *See State v. Johnson*, 702 S.W.2d 65, 69 (Mo. banc 1985) (earlier Disciplinary Rules "prohibit a prosecuting attorney from instituting criminal charges without probable cause").

In addition, a defendant is entitled to the effective representation of counsel in connection with the negotiation of a plea agreement. "[T]he negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Padilla v. Ky.*, 559 U.S. 356, 373 (2010) (citations omitted). "Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" *Id.* at 356 (citation omitted); *see also, e.g.*, *Mo. v. Frye*, 132 S.Ct. 1399, 1405 (2012); *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012). Effective assistance in plea negotiations requires counsel to conduct a reasonable investigation before advising a client to accept a plea:

> To aid the defendant in reaching a decision, defense counsel, after appropriate investigation, should advise the defendant of the alternatives available and address considerations deemed important by defense counsel or the defendant in reaching a decision. Defense counsel should not recommend to a defendant acceptance of a plea unless appropriate investigation and study of the case has been completed.

ABA STANDARDS FOR CRIMINAL JUSTICE, PLEAS OF GUILTY, Standard 14-3.2(b) (3d ed. 1999).[5] An appropriate investigation by counsel is necessary to ensure a defendant makes a knowing and voluntary decision to accept a guilty plea, because prior to pleading guilty, "[a] defendant needs to know, for example, the probability of conviction in the event of trial. Because this requires a careful evaluation of problems of proof and of possible defenses, few defendants can make this appraisal without the aid of counsel." *Id.*, Standard 14-3.2, Commentary at 118. Where a defendant can show that plea counsel's failure to conduct an adequate investigation "'affect[ed] the voluntariness and understanding with which the plea of guilty was

---

[5]    Although they are not controlling, the Supreme Court of the United States has recognized that "codified standards of professional practice . . . can be important guides" in determining whether defense counsel's performance was constitutionally sufficient. *Frye*, 132 S.Ct. at 1408 (citing ABA STANDARDS FOR CRIMINAL JUSTICE, PLEAS OF GUILTY); *Padilla*, 559 U.S. at 367 ("'[p]revailing norms of practice as reflected in American Bar Association standards and the like'" "may be valuable measures of the prevailing professional norms of effective representation"; citation omitted).

made,'" the defendant may state a viable claim for postconviction relief. *Voegtlin v. State*, 464 S.W.3d 544, 553 (Mo.App. E.D. 2015) (citation omitted); *see also, e.g., Ervin v. State*, 423 S.W.3d 789 (Mo. App. E.D. 2013) (reversing circuit court's denial of postconviction relief based on inadequate investigation by plea counsel); *Schafer v. State*, 256 S.W.3d 140 (Mo. App. W.D. 2008) (remanding claim of inadequate investigation by plea counsel to the circuit court for evidentiary hearing).

Thus, if Taylor can establish that his guilty pleas were induced by the threat of prosecution for charges for which the State lacked probable cause, and that his plea counsel did not advise him of the baselessness of the original charges or take action to challenge them, he would establish the involuntariness of his pleas, and be entitled to withdraw them. Taylor's Amended Motion adequately alleged facts to support these claims. As noted in Taylor's Amended Motion, the State initially charged him with three counts of burglary in the first degree. Section 569.160.1 provides that

> A person commits the crime of burglary in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein, and when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom, he or another participant in the crime:
>
> (1)     Is armed with explosives or a deadly weapon or;
>
> (2)     Causes or threatens immediate physical injury to any person who is not a participant in the crime; or
>
> (3)     There is present in the structure another person who is not a participant in the crime.

By contrast, "[a] person commits the crime of burglary in the second degree when he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein." § 569.170.1.

Thus, to prosecute Taylor for burglary in the first degree, the State was required to show not only that he unlawfully entered or remained in the school

10

buildings for the purpose of committing a crime, but that in connection with the offense, (1) Taylor was armed, (2) he caused or threatened physical injury to a third party, or (3) a third party was present in the buildings.

As Taylor's Amended Motion alleges, none of the charging instruments filed by the State alleged the existence of the additional circumstances necessary to support a charge of first-degree – as opposed to second-degree – burglary. Instead, the original information in each case charged only the facts necessary to sustain a charge of *second-degree* burglary: each information alleged that Taylor "knowingly entered and remained unlawfully in an inhabitable structure, . . . for the purpose of committing stealing [or vandalism] therein." Notably, the information in each case appears to be based on the pattern charge for burglary *in the second degree* (MACH-CR 23.54), rather than the pattern charge for burglary *in the first degree*, which requires the prosecution to specify the additional circumstances which justify the higher charge. *See* MACH-CR 23.52.

Further, the Affidavits of Probable Cause attached to each Information similarly fail to recite facts which would support a charge of first-degree burglary, and cast doubt on whether such circumstances in fact existed. Each affidavit was submitted by Plattsburg Police Officer Eddy J. Gilpin. The offenses occurred on July 5, 2009 – the Sunday of the 4th of July holiday weekend (and presumably during the schools' summer recess). The affidavit relating to the break-in at the high school states that Taylor "can be observed" (presumably on a video surveillance recording) entering the school at 6:23 a.m., and remaining inside the school until 7:38 a.m. According to Gilpin's affidavit, Taylor "can be observed . . . walking throughout the High School for approximately one hour and fifteen minutes," during which time Taylor picked up a backpack containing a laptop computer and iPod, which he attempted to sell to a confidential informant at approximately noon on July 5. With respect to the elementary school break-in, Gilpin's affidavit states

11

that Taylor entered the school building between 7:38 and 11:00 a.m., forcibly entered several classrooms (causing damage to door frames and locking mechanisms), damaged two computer monitors, and discharged a fire extinguisher in the Principal's Office. With respect to the middle school, Gilpin's affidavit states that Taylor gained access by prying open a lock on the exit door, broke an interior window in the School Secretary's office, and attempted to gain access to a safe in the office by prying the hinges loose.[6]

None of the affidavits refer to Taylor being armed, or injuring or threatening to injure any individual; nor do any of the affidavits refer to other persons being present in the school buildings. The nature of Taylor's actions described in the affidavits (including wandering through the high school building for more than an hour, and entering multiple classrooms in the elementary school), suggest that other persons were not present. Certainly, none of the affidavits suggest that Taylor was interrupted *in media res*; instead, it appears that he was arrested following all three burglaries, when he attempted to sell electronic equipment he had stolen from the high school. The likelihood that the buildings were vacant is increased by the fact that the burglaries targeted school buildings on the Sunday morning of a holiday weekend during the summer vacation period.

Notably, although Gilpin's affidavits are attached to Informations which charge *first-degree* burglary, the first paragraph of each Affidavit of Probable Cause recites:

> I have probable cause to believe that on **07/05/2009** the Suspect,
> **Ronald Shane Taylor a white male, DOB: [specified], SOC: [specified]**

---

[6] With respect to the break-in at the middle school, Gilpin's affidavit states that the unlawful entry occurred "[o]n [Sunday,] 06/28/2009 . . . between the hours of 1600 and 0800." The information to which this affidavit is attached charges Taylor with a first-degree burglary occurring on *July 5*, however, and statements during the guilty-plea and sentencing hearings likewise indicate that all three burglaries occurred on the morning of July 5, 2009.

**who was last know[n] to reside at [address]** committed one or more criminal offense(s).

**Burglary in the Second Degree (§569.170 RSMo) A Class C Felony**

(Emphasis in original.)

Besides referring to the charging documents and Affidavits of Probable Cause, Taylor's Amended Motion also alleges that "[t]here was no indication in the discovery that another person was present in any of the school buildings or any other basis to warrant a charge of burglary in the first degree."

We also note that during Taylor's guilty-plea hearing, he testified that the three burglaries occurred on "the morning of the 5th, but it all happened on the night of the 4th of July," substantially diminishing the likelihood that anyone was in the buildings at the time. During the guilty-plea hearing the court asked both Taylor and the prosecution to describe the events as known to them; neither Taylor nor the State identified any facts which would support a charge of first-degree burglary with respect to any of the three offenses.

Taylor's Amended Motion alleges that his appointed counsel "advised Movant to waive his preliminary hearings, never contested the lack of probable cause or factual allegations to support the first degree burglary charges, never advised Movant concerning the lack of any factual basis for the first degree burglary charges, and proceeded throughout the case as if there was some basis for the first degree burglary charges." The Motion also alleges that, "[b]ased on the threat of a potential prosecution for the three class B felonies, Movant agreed to plead guilty," that his guilty pleas were involuntary because they "were induced by a threat to prosecute Movant for offenses he did not commit," and that, but for his counsel's failure to address the baseless charges, "Movant would not have pleaded guilty, but would have proceeded to trial."

13

The nature of the plea agreement negotiated by Taylor's counsel also suggests that the viability of the first-degree burglary charges was a critical factor in Taylor's decision to plead guilty. Because the prosecution did not adhere to its written agreement to make no sentencing recommendation (*see* note 2, above, and because Taylor was ultimately sentenced to consecutive, maximum-length sentences for the three charges, it appears that the only meaningful concession he won in the plea agreement was the State's agreement to reduce the charges from first- to second-degree burglary. Unless Taylor faced a legitimate prospect of conviction for first-degree burglary, it appears that he ultimately received little or nothing in exchange for his waiver of his right to trial.

In these circumstances, we conclude that Taylor's Amended Motion sufficiently "alleged facts, not conclusions, warranting relief," and alleged that "the matters complained of resulted in prejudice to him." *Roberts v. State*, 276 S.W.3d 833, 835 (Mo. banc 2009). To determine whether he was entitled to an evidentiary hearing, the remaining issue is whether the facts alleged in his Amended Motion "raise matters not refuted by the files and record of his case." *Id.*

B.

The motion court concluded that Taylor's allegations were refuted by the record based on his answers to questions from the Court during his guilty-plea hearing. We disagree.

The motion court first cited Taylor's response to a question concerning threats which may have induced his plea. The relevant exchange from his guilty-plea hearing was transcribed as follows:

> Q.     . . . Have you been threatened or coerced in [an]y manner to cause you to plead guilty here today?
>
> And that would include a threat of physical violence to you, your friends; a threat of further prosecution, dismissal of other charges, or anything that is not now before the Court.

14

A. (Inaudible response.)

Q. Have you been promised anything to cause you to plead guilty other than the amendment of the three charges and that the state will make no mention of – make no recommendation as to the range of punishment but only that it be run consecutive?

That's all you've been told?

A. Yes.

We assume that in response to the first question, Taylor indicated that he had **not** been threatened or coerced, although the transcript records no response. Even on this assumption, however, this colloquy is insufficient to refute Taylor's current claim. The general reference to threats or coercion, with the examples of "a threat of physical violence" or further prosecution "that is not now before the Court," was insufficient to prompt Taylor to address any defects in the charges filed in the three cases themselves. Moreover, the court's very next question specifically referred to the State's promise to amend the charges in the three cases to second-degree burglary, indicating that the amendment of the charges (or the withholding of that amendment if Taylor did not plead guilty) was not the sort of threat or coercion to which the court was referring.

The motion court also referred to Taylor's failure during the guilty-plea hearing to indicate "that he was in any way dissatisfied with counsel." The court made only general inquiries of Taylor concerning his satisfaction with counsel's performance, however. Taylor's failure to express dissatisfaction with his counsel in response to very general questioning at his guilty-plea hearing is insufficient to conclusively refute his ineffective-assistance claim, particularly where there is no indication that Taylor would have been aware of his present claim at the time. *See Webb v. State*, 334 S.W.3d 126, 130 (Mo. banc 2011) ("a negative response to a routine inquiry [concerning satisfaction with counsel's services] has not been considered sufficient to refute the record").

15

## Conclusion

The judgment of the circuit court is reversed, and the case is remanded for further proceedings consistent with this opinion.

_____
Alok Ahuja, Judge

All concur.

16