

# Missouri Court of Appeals

## Southern District

### In Division

KIMBERLY K. HENDERSON,           )
                                 )
                 Appellant,      )
                                 )   No.  SD38380
        vs.                      )
                                 )   FILED:  February 26, 2025
STATE OF MISSOURI,               )
                                 )
                 Respondent.     )

### APPEAL FROM THE CIRCUIT COURT OF LAWRENCE COUNTY

Honorable David A. Cole, Judge

**AFFIRMED**

Kimberly Henderson ("Movant") appeals the judgment of the motion court denying her Rule 24.035[1] motion for post-conviction relief.  In two points on appeal, Movant argues (1) "[t]he motion court clearly erred in denying Movant's amended motion claim by concluding that the prosecutor had probable cause for all the charges and did not commit misconduct"; and (2) the motion court clearly erred "by concluding that plea counsel's failure to file a bond motion was justified by his determination it would be futile."  Finding no merit in Movant's points, we affirm the motion court's judgment.

---

[1] All rule references are to Missouri Court Rules (2022).

## Factual Background and Procedural History

### Trial Court Proceedings

Movant was arrested on August 20, 2020, for first-degree murder under section 565.020[2] and two other crimes. The probable cause statement alleged that on August 16, 2020, two women ("Victim 1 and Victim 2") were in a vehicle when Gary Hunter ("Hunter") approached and asked "if he could get in." They agreed and then he put a firearm to Victim 2's head and told Victim 1 to drive. At Hunter's direction, Victim 1 drove to the residence of Christina Knapp ("Knapp") where he ordered them to exit the vehicle and directed them to start digging grave holes in Knapp's yard. Hunter told Knapp to retrieve Hunter's firearm from his vehicle, and after she did so, Andrew Cypret ("Cypret") came over to where Victim 1 and Victim 2 were digging grave holes, took Hunter's weapon, sat down in a lawn chair, and watched.

Movant, who is Cypret's mother, arrived at Knapp's residence and picked up a set of keys from the bumper of Knapp's vehicle. When Movant asked, "who's keys are these," Victim 1 answered that they were her keys, at which point Movant took the keys and put them in Hunter's shirt pocket, stating "you are going to be needing these."

Hunter then forced Victim 1 and Victim 2 into the trunk of Cypret's vehicle. Siera Dunham ("Dunham") arrived at Knapp's residence and told Hunter that she wanted the shoes that Victim 2 was wearing. Hunter told her that "[Victim 2] was going to need them where they were going" but gave Dunham the shoes after Victim 2 got in the trunk. Hunter drove Victim 1's vehicle to a place with an abandoned well and Cypret, Dunham, and Frank Sheridan ("Sheridan") followed in Cypret's vehicle. Hunter told Victim 1 and Victim 2 to get into the well. After they did so, Hunter shot Victim 2, killing her instantly. Hunter kept firing into the

---

[2] All statutory citations are to RSMo 2016 including, as applicable, statutory changes effective January 1, 2017.

well. Victim 1 hid under Victim 2's body, "playing dead" until Hunter stopped firing and left. Victim 2 then exited the well and contacted law enforcement.

A grand jury issued several indictments arising from this incident. Movant was indicted as an accomplice for first-degree murder under section 565.020, first-degree robbery under section 570.023, and six other felonies. A warrant was issued with the bond amount being set as "No Bond." Movant appeared without counsel for a bond hearing. The trial court found that "no condition or combination of conditions of release will reasonably assure the safety of any other person and the community" or "assure [Movant] will appear in court as required." Movant was ordered to be held without bond pending trial due to the "nature and circumstances of the offense," the "character and mental condition of [Movant]," the strong "weight of the evidence against Movant," and that "[Movant] will be subject to a lengthy period of incarceration if convicted."

On February 15, 2022, Movant pleaded guilty to first-degree robbery pursuant to a plea agreement with the State where the State agreed to dismiss the remaining counts and recommend 25 years' imprisonment. At the plea hearing, the prosecutor announced the factual basis for the guilty plea:

> The State's evidence would be coming mostly from [Victim 2]. Also, from multiple detectives and law enforcement that are listed. Also, from [Sheridan] who is a co-defendant who was there and has made a deal to testify.

> The evidence would be that . . . [Movant] lives next door to [Knapp's residence]. [Movant] along with eight other people all joined in the kidnapping that occurred of [Victim 1 and Victim 2]. [Victim 1 and Victim 2] were beaten, harassed and beaten there and given shovels to dig their own graves.

> At which time they were digging their own graves it was determined that they were not going to make enough progress to be able to bury [the] women there due to the fact that the ground was too rocky. There is evidence and pictures of the rocky ground and it was all gravel and rock where they were digging.

3

At that point a decision was made to take the women to another location and dispose of them. At this time is when [Movant] took the keys from [Victim 2]'s truck and handed them to [Hunter]. Some of the evidence says that she actually placed the keys in a pocket on his front chest. She did—the keys were handed by her to him stating that they are going to need these.

During the plea hearing, Movant answered affirmatively that she had adequate opportunity to discuss her case with her plea counsel, that she was satisfied with his representation, and that he had done everything that she had asked him to do. Movant acknowledged that by entering her plea of guilty she understood the State's recommendation and the charges levied against her, and that she would waive her rights to jury trial and to direct appeal. Movant also denied that anyone "made any threats, promises, [or] used any force or coercion" to induce her to testify against her will.

The trial court found that "[Movant]'s plea of guilty is made knowingly, voluntarily and intelligently with a full understanding of the charge and the consequence of the plea; with an understanding of the [Movant's] rights attending a jury trial and the effect of a guilty plea upon those rights." The trial court accepted Movant's guilty plea and sentenced Movant per the State's recommendation to 25 years' imprisonment. Movant did not directly appeal the trial court's judgment.

### Motion Court Proceedings

Movant timely filed a motion to vacate, set aside, or correct the judgment or sentence. Movant also timely filed an amended Rule 24.035 motion. In her amended motion, Movant claimed that (1) the prosecutor engaged in misconduct by charging Movant with offenses without probable cause and that the prosecutor's misconduct induced her to plead guilty to first-degree robbery, making her guilty plea involuntary, and (2) plea counsel provided ineffective assistance of counsel by failing to file a motion for bond.

4

At an evidentiary hearing on Movant's claims, plea counsel testified that based on his understanding of the prosecutor's evidence and theory of the case, on the day the alleged crimes occurred, Movant entered a backyard where "men ha[d] guns around [the] two ladies." Movant then took the keys off the vehicle bumper and gave them to the "bad actor" and then she became "part of that conspiracy." Plea counsel thought the theory was "weak at best" but "they probably had enough to get that to a jury."

Plea counsel further testified that he discussed requesting a bond with Movant and stated "every time someone is charged I talk about the best thing that can happen, the worst thing that can happen, the facts that are good, the facts that are bad. We talk about all that." Plea counsel "fully inform[ed]" Movant of her "rights regarding a bond" and discussed the ramifications of requesting or failing to request bond. Plea counsel testified:

> I think that the - we had quite a lengthy discussion - this is based upon my practice. This was the most heinous and psychologically deviant murder that I have ever even heard of in practical life. . . .
>
> The facts such as, you know, making these young ladies dig their grave. And then that was not enough, and then throwing them down in a well, you know, then shots fired in the well. And somebody hides under somebody who died.
>
> Her involvement with those, though she wasn't at the well, seems to implicate some culpability that I told her that it was my opinion that based upon that the Court wouldn't order bond any way. She I think agreed at the time with that assessment.

Plea counsel testified that he "thought a bond motion wouldn't have made a difference in the case," as, in his experience, "prosecutors when you argue things like bond they tend to not discuss plea offers anymore." Plea counsel testified that although the prosecutor in this case did not indicate he would have revoked his plea offer, based on the "heinous nature" of the crimes charged, it was possible that it could "have happened in this case." Plea counsel therefore testified, as a matter of trial strategy, he ultimately decided not to request bond.

Movant testified on her own behalf that she "absolutely" would not have pleaded guilty if she was able to post a bond, she would have gone to trial, and would have been able to participate more in her defense. On cross-examination, Movant acknowledged that at the guilty plea hearing she had indicated she had adequate opportunity to discuss her case with her plea counsel, that she was satisfied with his representation, and that he had done everything that she had asked him to do.

The motion court entered its findings of fact and conclusions of law, concluding that, with regard to Movant's first claim, the "charges brought in the indictment were supported by probable cause and no prosecutorial misconduct was present." With regard to Movant's second claim, the motion court found plea counsel's testimony that "filing a Motion for a bond would be futile and discussed with Movant and he decided against it as a matter of trial strategy" to be "credible," concluding that plea counsel's failure to request bond was a matter of trial strategy and did not constitute ineffective assistance of counsel. Movant appealed.

**Standard of Review**

"Appellate review of the trial court's action on the motion filed under this Rule 24.035 shall be limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 24.035(k). "To be clearly erroneous, a trial court's decision must leave the appellate court with a definite and firm conviction a mistake has been made." *Martinez v. State*, 698 S.W.3d 518, 522 (Mo.App. 2024) (internal quotation marks omitted). However, as the Supreme Court of Missouri recently explained,

> [clear error] review includes *de novo* review for errors of law, rejection of factual findings for which there is no substantial evidence, and – in the rarest of cases – rejection of factual findings for which there may be substantial evidence but regarding which the reviewing court, nevertheless, on the entire record, is left with a definite and firm conviction (or impression) that a mistake has been made.

6

*Flaherty v. State*, 694 S.W.3d 413, 419 (Mo. banc 2024). "The motion court's findings are presumed correct. This Court defers to the motion court's superior opportunity to judge the credibility of witnesses." *Davis v. State*, 486 S.W.3d 898, 905 (Mo. banc 2016) (internal citations and quotation marks omitted). "After a guilty plea, our review is limited to a determination of whether the movant's plea was knowing and voluntary." *Ventimiglia v. State*, 468 S.W.3d 455, 461 (Mo.App. 2015).

### Discussion

Point One

Point One mirrors Movant's first claim in her amended motion where she argues the motion court clearly erred by concluding that the prosecutor had probable cause to charge Movant with first-degree murder as an accomplice and thus the prosecutor induced Movant into pleading guilty to first-degree robbery, making her guilty plea involuntary.

"A guilty plea not only admits guilt but also consents to judgment of conviction without a jury trial. Accordingly, a guilty plea must be a voluntary expression of the defendant's choice, and a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." *Cooper v. State*. 356 S.W.3d 148, 153 (Mo. banc 2011). The mere fact that a defendant faces greater charges than those to which she pleads guilty does not make her guilty plea involuntary.

> Plea bargaining flows from 'the mutuality of advantage' to defendants and prosecutors, each with his own reasons for wanting to avoid trial. Defendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choice in response to prosecutorial persuasion, and unlikely to be driven to false self-condemnation.

> * * *

> While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the

7

imposition of these difficult choices is an inevitable—and permissible—attribute of any legitimate system which tolerates and encourages the negotiation of pleas. It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.

*Bordenkircher v. Hayes*, 434 U.S. 357, 363-64 (1978). Yet the prosecutor's ability to charge a defendant under applicable criminal statutes is not unlimited. "In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Id*. at 364. So long as the prosecutor has a "good-faith basis for the harsher charges," "a defendant [can] enter a voluntary guilty plea even though prosecutors threatened the defendant with charges carrying greater punishment. . . ." *Taylor v. State*, 497 S.W.3d 342, 348 (Mo.App. 2016).

The question, then, is whether the prosecutor had probable cause to charge Defendant with first-degree murder. Under section 565.020.1, "[a] person commits the offense of murder in the first degree if he or she knowingly causes the death of another person after deliberation upon the matter." When the defendant is charged with first-degree murder on a theory of accomplice liability, the State does not need to prove that the defendant personally killed the victim or that the defendant was present at the scene of the killing. *See State v. McBenge*, 507 S.W.3d 94, 106 (Mo.App. 2016). However, the defendant "must have acted together with or aided the other person either before or during the commission of the murder with the purpose of promoting the crime." *State v. Sander*, 682 S.W.3d 85, 93 (Mo.App. 2023) (internal quotation marks omitted). To prove first-degree murder based on a theory of accomplice liability, the State must

> introduce evidence from which a reasonable juror could have concluded beyond a reasonable doubt that, (1) the defendant committed acts which aided another in killing the victim; (2) it was the defendant's conscious purpose in committing

8

those acts that the victim be killed; and (3) the defendant committed the acts after he personally deliberated on the victim's death.

*Id*. (internal quotation marks omitted). "Deliberation" is "cool reflection for any length of time no matter how brief[.]" Section 565.002(5). "Deliberation is not a question of time—an instant is sufficient—and the reference to 'cool reflection' does not require that the defendant be detached or disinterested." ***State v. Sokolic***, 660 S.W.3d 54, 58 (Mo.App. 2023). "Ordinarily deliberation is proved through evidence of circumstances surrounding the killing." ***Id.*** (internal quotation marks omitted).

Deferring to the "motion court's superior opportunity to judge the credibility of witnesses," ***Davis***, 486 S.W.3d at 905 (internal citations and quotation marks omitted), the evidence of the circumstances surrounding Victim 2's murder indicated that Movant arrived in Knapp's backyard where the victims were digging their own graves and were surrounded by multiple individuals with drawn weapons. At some point, it was determined that the perpetrators would not be able to bury Victim 1 and Victim 2 in the backyard because the ground was too rocky and a decision was made to take the victims elsewhere to "dispose of them." According to the probable cause statement, Movant took a set of keys off the bumper of Knapp's vehicle. When Movant asked, "who's keys are these," Victim 1 answered that they were her keys, at which point Movant took the keys and put them in Hunter's shirt pocket, stating "you are going to be needing these."

Movant gave Victim 1's keys—not to Victim 1, who indicated that the keys belonged to her—but to Hunter, the man who kidnapped Victim 1 and forced both victims to dig their own graves. She gave him Victim 1's keys at the time when a decision was made to move the victims elsewhere to be murdered. From these circumstances, the prosecutor could have a good-faith basis to believe a reasonable jury could conclude Movant knew the victims were going to be

9

moved elsewhere to be murdered, deliberated—even if only for a brief moment—on the death of both victims, and, by giving Hunter Victim 1's keys, decided to commit an act with the conscious purpose of aiding Hunter and those with him in killing both victims. The prosecutor therefore had probable cause to charge Movant with first-degree murder based on a theory of accomplice liability. Movant's guilty plea was not coerced and involuntary, as the prosecutor had a "good-faith basis for the harsher charges," *Taylor*, 497 S.W.3d at 348, and the motion court did not clearly err in deciding that the prosecutor had probable cause to charge Movant with first-degree murder.

Point One is denied.

### Point Two

Movant argues the motion court clearly erred in concluding that Movant's plea counsel in her underlying case rendered effective assistance of counsel even though he did not file a bond motion because he believed it was "futile." Movant states that, "had [plea counsel] filed a bond motion, there is a reasonable probability that [Movant] would have been able to get out of custody and would not have given up her right to a jury trial by pleading guilty."

Yet after a "negotiated plea of guilty, Movant's claim of ineffective assistance of counsel is immaterial except to the extent it impinges upon the voluntariness and knowledge with which the guilty plea was made." *Roberts v. State*, 276 S.W.3d 833, 836 (Mo. banc 2009) (internal quotation marks omitted). "Thus, a movant must establish a serious dereliction of duty that materially affected his substantial rights and further show that his guilty plea was not an intelligent or knowing act." *Branch v. State*, 531 S.W.3d 621, 624 (Mo.App. 2017) (internal quotation marks omitted).

Movant argues on appeal that plea counsel's performance was deficient and his

10

performance prejudiced Movant, as at the evidentiary hearing Movant testified on her own behalf that she "absolutely" would not have pleaded guilty if she was able to post a bond, as she would been able to go to trial and participate more in her defense. Movant's argument, however, does not impinge "upon the voluntariness and knowledge with which the guilty plea was made." *Roberts v. State*, 276 S.W.3d at 836. Neither Movant's amended motion nor her argument on appeal contend that plea counsel's failure to file a motion for bond made Movant's subsequent guilty plea unknowing or involuntary. Movant, by asserting that she "absolutely" would not have pleaded guilty if she was able to post bond, does not indicate that her subsequent guilty plea was unknowing or involuntary – only that had plea counsel filed a motion for bond, Movant would have gone to trial. Movant challenges only plea counsel's competence as Movant's legal counsel, not her own knowledge or the voluntary nature of her guilty plea.

Even if Movant argued that plea counsel's failure to file a motion for bond made her subsequent guilty plea unknowing or involuntary, the record distinctly refutes any such argument. At the guilty plea hearing, Movant acknowledged that by entering her plea of guilty she gave up her right to trial by jury, she stated she understood the State's recommendation and the charges levied against her, and that she understood that she would waive her rights to direct appeal. Movant also denied that anyone "made any threats, promises, [or] used any force or coercion" to induce her to testify against her will. On cross-examination during the evidentiary hearing, Movant confirmed she indicated at the plea hearing that she had adequate opportunity to discuss her case with her plea counsel, that she was satisfied with his representation, and that he had done everything that she had asked him to do.

Challenging the knowing or voluntary nature of Movant's guilty plea is the "sole avenue of post-conviction relief for non-jurisdictional claims available to a movant who pleaded guilty,"

11

*Meadors v. State*, 571 S.W.3d 207, 212 (Mo.App. 2019). Movant's argument fails to "establish a serious dereliction of duty that materially affected [her] substantial rights and further show that [her] guilty plea was not an intelligent or knowing act." *Branch*, 531 S.W.3d at 624 (internal quotation marks omitted). Accordingly, the motion court's decision denying Movant's second claim does not give us a "definite and firm conviction a mistake has been made."[3] *Martinez*, 698 S.W.3d at 522 (internal quotation marks omitted).

Point Two is denied.

## Decision

The judgment of the motion court is affirmed.

BECKY J. WEST, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

DON E. BURRELL, J. – CONCURS

---

[3] Although the motion court addressed Movant's argument on the merits and did not conclude that Movant waived her ineffective assistance of counsel claim by pleading guilty, "[r]egardless of the error, we will not reverse the motion court where the court reaches the correct result even if for the wrong reason." *Hays v. State*, 360 S.W.3d 304, 310 (Mo.App. 2012).

12