

# NUMBER 13-24-00236-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| **DAMIEN RENWICK JONES,** | **Appellant,** |
| **v.** | |
| **THE STATE OF TEXAS,** | **Appellee.** |

## ON APPEAL FROM THE 130TH DISTRICT COURT
## OF MATAGORDA COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Silva, Peña, and Fonseca**
**Memorandum Opinion by Justice Peña**

Appellant Damien Renwick Jones was indicted for possession of a controlled substance with intent to deliver. *See* TEX. HEALTH & SAFETY CODE § 481.112(a), (d). The indictment contained two enhancement paragraphs alleging that he had previously been convicted of two felony offenses. *See*. TEX. PENAL CODE § 12.42(d) Following a jury trial, appellant was found guilty of the indicted offense and was sentenced to seventy-five

years' imprisonment. Appellant argues by two issues, which we consider as three, that the trial court erred when (1) it denied his motion to suppress, (2) denied his motion for continuance, and (3) the evidence was insufficient to support a conviction. We affirm.

## I.  BACKGROUND

Sergeant Joseph Bruno, a Bay City Police Department Narcotics unit supervisor, was investigating an anonymous tip of suspected drug dealing from a residence. Sergent Bruno conducted surveillance on the residence when appellant arrived at the residence and "did not leave." Sergeant Bruno testified that this "raised [his] suspicions" about appellant's participation in drug dealing activity. Sergeant Bruno then "[c]onducted an in-house search" and discovered that appellant had a "history of Code II narcotics related activities." Additional anonymous tips revealed that appellant "frequently walked Highway 60[1] towards Maverick . . . distributing large amounts of methamphetamine" and that he had an active warrant for his arrest. Sergeant Bruno, after verifying that the warrant was active, instructed Officer Jerome Estrada, who was on patrol, to be on the lookout for appellant and to "[g]o ahead and make the stop." Officer Estrada testified that he received a photograph from Sergeant Bruno depicting appellant. Officer Estrada, requested and received from dispatch, a driver's license photograph and verified that appellant had an active warrant. When Officer Estrada saw appellant, appellant matched the description of "the individual . . . in[] question" and Officer Estrada "initiated a traffic stop" to execute the warrant. Officer Estrada approached appellant "to initiate a pedestrian traffic stop."  He "initiated [his] lights and parked [his] unit to make contact." Appellant, according to Officer Estrada's testimony [was] not obeying verbal commands." Officer Estrada attempted to

---

[1] Through testimony, Sergeant Bruno established that "Highway 60" is also known as "Avenue F." Avenue F is the location where the stop and subsequent interaction with appellant took place.

guide appellant towards the front of the unit but appellant resisted. Dash camera video footage and footage from Officer Estrada's body worn camera introduced as evidence showed appellant pull his arm away from Officer Estrada. Sergeant Bruno then arrived on the scene to assist in the detention. Appellant then began to "use the front bumper of the patrol car as a stabilizer and [tried] to buck [the officers] off." Appellant was taken to the ground where he was handcuffed and subsequently searched. After he was placed in the patrol unit, a search of the vicinity where the struggle commenced resulted in the discovery of a black plastic bag containing methamphetamine and other clear baggies containing pills.

Appellant was indicted for possession with intent to deliver methamphetamine. TEX. HEALTH & SAFETY CODE § 481.122(a), (d). On April 29, 2024, appellant and the State appeared and announced ready for trial. Jury selection was conducted and the trial recessed until the next day. On April 30, 2024, appellant's trial counsel urged a motion to suppress evidence filed on the evening after jury selection. Trial counsel for appellant alleged that the State produced evidence the night after jury selection that consisted of transcripts of a jail call and an audio recording of the jail call. Particularly, the jail call pertained to a jail visit that occurred on December 6, 2022. Trial counsel contended that he "did not have a meaningful chance to review this evidence to be able to put it in the trial strategy or counsel [his] client." He requested that the evidence be excluded. The motion to suppress was denied. The trial court asked appellant's trial counsel how much time he would need to review the evidence before continuing with trial. Counsel requested and received one hour to review the evidence before trial resumed.

At trial the State introduced witness testimony from the officers involved in the

3

interaction with appellant and Harry Ehmann, a forensic scientist for the Texas Department of Public Safety. Ehmann testified to the presence of methamphetamine in the substance that was found in the black bag and indicated that it weighed 32.66 grams. Sergeant Bruno testified to the tips that led to the investigation; he testified that the location where appellant was apprehended and detained was known as Avenue F and Highway 60; and finally he testified that, in his experience, the amount of methamphetamine found, and attributed to appellant's possession, is typically "an amount you would have for distribution." Officer Estrada testified to the events leading him to approach and detain appellant. He testified to the events seen on the video footage from the dash camera and body worn camera, and how the black bag containing controlled substances was found. Officer Estrada testified that a person who uses methamphetamine typically possesses "less than one gram" of methamphetamine. Crime scene investigators testified to the chain-of-custody and handling of the evidence after it was found. The record does not reflect that the State sought to admit the audio recording or transcript of the phone call into evidence. After considering the evidence submitted, the jury found appellant guilty of possession of a controlled substance under Texas Health and Safety Code Section 481.112(a), and (d). The jury assessed punishment at seventy-five years' imprisonment. *See* TEX PENAL CODE § 12.42(d). This appeal followed.

## II. DISCUSSION

### A. Denial of Motion to Suppress

When we review a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review. *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We give almost total

4

deference to the trial court's findings of historical facts as well as mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Abney v. State*, 394 S.W.3d 542, 547 (Tex. Crim. App. 2013).

"Generally, appellate courts view the evidence in the light most favorable to the trial judge's ruling, regardless of whether the judge granted or denied the suppression motion." *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011). "[C]ourts afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." (citation modified) *Id*. Finally, "the ruling will be upheld if it is supported by the record and correct under any theory of law applicable to the case. *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009).

Having reviewed the record, it does not appear that the evidence that was the subject of the motion to suppress was used at trial. In similar cases, where motions to suppress evidence were denied but the evidence was not introduced or admitted into evidence, appellate courts have determined that the issue is moot and the point on appeal should be overruled. *See Long v. State*, 525 S.W.3d 351, 368 (Tex. App.—Houston [14th Dist.] 2017) (quoting *Gonzalez v. State*, 296 S.W.3d 620, 633 (Tex. App.—El Paso 2009, pet ref'd)).

In *Long*, appellant argued that the trial court erred when it denied his motion to suppress evidence obtained pursuant to his written consent to search his residence.[2] 525 S.W.3d at 368. However, the appellate court overruled his issue as moot when it determined that the record did not reflect that any of the items seized were offered or admitted at trial. *Id.* We apply the same reasoning here. We find that appellant cannot

---

[2] Appellant in *Long* argued that the consent was not valid as to the residence. *Long v. State*, 525 S.W.3d 351, 368 (Tex.App.—Houston [14th Dist.] 2017).

show he was harmed by any error. Thus, the issue is moot. We overrule appellant's first issue. *Id.* (quoting *Gonzalez*, 296 S.W.3d at 633).

## B.      Motion for Continuance

We employ an abuse of discretion standard to review the grant or denial of a motion for continuance. *Brumfield v. State*, 641 S.W.3d 568, 580 (Tex. App.—Tyler 2022, pet. ref'd). "A criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown, which cause shall be fully set forth in the motion." Tex. Code Crim. Proc. Art 29.03; see Anderson v. State, 301 S.W.3d 276, 278–789 (Tex. Crim. App. 2009). Additionally, Texas Rule of Appellate Procedure 33.1 provides that an objection must be timely made with sufficient specificity to apprise the trial court of the complaint and the basis for the objection, and the party making the objection must obtain a ruling on that objection. *See* TEX. R. APP. P. 33.1(a)(1); *Garza v. State*, 126 S. W.3d 79, 81–82 (Tex. Crim. App. 2004). "Ultimately, an unsworn oral motion preserves nothing for appeal." *Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012) (citing *Anderson*, 301 S.W.3d at 280).

Appellant's motion to suppress alleged that new evidence was provided after the jury was seated and before making opening remarks; that the evidence was unavailable to guide pretrial negotiations; and that the evidence should be excluded. There is nothing in the record that indicates appellant requested a continuance. Nonetheless, when asked how much time he needed in order to be ready for trial, he requested and received one hour. Not only has appellant failed to preserve the issue for appellate review, there is no indication that a request for continuance was denied. We overrule appellant's second issue.

6

**C. Sufficiency of the Evidence**

In reviewing the sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The jury is the exclusive judge of the credibility of the witnesses and the weight to be given to the evidence. *See Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the jury's responsibility to fairly resolve conflicts in testimony, weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* This standard applies to both circumstantial and direct evidence. *Id.*

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Villarreal*, 286 S.W.3d at 327.

The elements of the offense of possession of a controlled substance as charged are (1) the defendant; (2) knowingly or intentionally; (3) possessed; (4) with intent to deliver; (5) at least four grams or more but less than 200 grams. TEX. HEALTH & SAFETY CODE § 481.112(a), (d).

7

"Possession" means "actual care, custody, control, or management." TEX. PENAL CODE § 1.07(2)(39). "To support a defendant's conviction as a principal actor, the State had to prove the defendant 'knowingly possessed' the contraband, which requires proof that the defendant (1) exercised 'actual care, custody, control, or management' over the substance and (2) knew the substance was contraband." *Espino-Cruz v. State*, 586 S.W.3d 538, 543 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) (citing TEX. HEALTH & SAFETY CODE § 481.002(38)); *see also Romero v. State*, No. 13-20-00103-CR, 2021 WL 1045804, at *4 (Tex. App.—Corpus Christi–Edinburg Mar. 18, 2021, no pet.) (mem. op., not designated for publication).

The State must prove that the defendant's connection with the contraband "was more than fortuitous"; in other words, "[m]ere presence at the location where drugs are found is . . . insufficient, by itself, to establish actual care, custody, or control of those drugs." *Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006). "[E]vidence which affirmatively links [the defendant] to [the contraband] suffices for proof that [he] possessed it knowingly." *Barbosa v. State*, 537 S.W.3d 640, 645 (Tex. App.—San Antonio 2017, no pet.) (citing *Brown v. State,* 911 S.W.2d 744, 747 (Tex. Crim. App. 1995) (en banc); *see also Romero*, 2021 WL 1045804, at *4.

The defendant does not need to be in exclusive possession of the contraband—a fact finder may otherwise infer that the defendant knowingly or intentionally possessed the contraband if sufficient facts and circumstances support the inference of possession. *Tate v. State*, 500 S.W.3d 410, 413–14 (Tex. Crim. App. 2016). The Texas Court of Criminal Appeals has compiled a non-exhaustive list of factors which may indicate a link connecting the defendant to the knowing possession of contraband,

8

(1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Id.* at 414 (quoting *Evans*, 202 S.W.3d at 162 n.12; *Huan Phuoc Le v. State*, 479 S.W.3d 462, 467 (Tex. App.—Houston [14th Dist.] 2015, no pet)). "Although these factors can help guide a court's analysis, ultimately the inquiry remains that set forth in Jackson . . . ." *Id*. (citing *Jackson*, 443 U.S. at 318–19). Further, it is "not the number of links that is dispositive, but rather the logical force of all the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162. "[J]uries trump both trial and appellate judges on weight-of-evidence determinations." *Id*. at 164 (citing *Jackson*, 443 U.S. at 326).

Appellant's counsel argued at trial that "[n]o frame of video and no photo shows [appellant] in possession" of the black bag containing the drugs that were discovered after the interaction with appellant. His sole contention on appeal is that "a rational jury could not have found beyond a reasonable doubt that [appellant] exercised care, custody, control or management over the bag of drugs or controlled substance found on the sidewalk." The State argues that the evidence established affirmative links between appellant and the drugs to the extent "that a reasonable inference may arise that he knew of the contraband's existence and that he exercised control over it." *Jenkins v. State*, 76

S.W.3d 709, 711–12 (Tex. App.—Corpus Christi-Edinburg 2002, pet. ref'd (citing *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995). We agree with the State.

Considering first the issue of possession in light of the *Evans* factors, although the drugs were not found on his person, according to the testimony and video evidence admitted at trial, the black bag containing the methamphetamine was located near the police unit where appellant began to struggle with the officers. This tends to show appellant's connection to the drugs in question was more than simply fortuitous. *Jones*, 963 S.W.2d at 830*; Evans*, 202 S.W.3d at 162 n.12; *Hung Phuoc Le*, 479 S.W.3d at 467.

Second, appellant's "attempt to resist arrest and get away from the officers" as testified to and seen on video indicates a "consciousness of guilt." *Evans*, 202 S.W.3d at 162 n.12*.* The testimony showed that when Officer Estrada approached appellant to execute the warrant, appellant did not obey verbal commands. As Officer Estrada attempted to gain control of the situation and guide appellant towards the front of the vehicle, appellant began resisting and began to pull away from Officer Estrada. When Sergeant Bruno arrived to assist appellant began to "use the front bumper of the patrol car as a stabilizer and [tried] to buck [the officers] off."

Finally, we consider the unobjected to testimony from Sergeant Bruno that he was investigating anonymous tips about drug dealing at the residence which appellant visited prior to his arrest. Sergeant Bruno testified that he noticed high traffic coming in and out of the residence and that appellant was one of those who went to the residence "and did not leave," raising suspicions that he was involved in drug trafficking. Sergeant Bruno's testimony also revealed that appellant had a history of narcotics-related activity and a tip that he "frequently walks . . . highway 60 distributing large amounts of methamphetamine."

The location where appellant was approached by Officer Estrada and Sergeant Bruno was identified through testimony as Avenue F, also known as highway 60. After examining the evidence in light most favorable to the verdict, we find that a jury could reasonably conclude that appellant's connection to the contraband was more than just fortuitous and the logical force of the factors could lead them to determine that the elements of the indicted offense were established beyond a reasonable doubt.

With regard to the element of intent to deliver, Officer Estrada testified that methamphetamine users "typically have less than a gram on them if they're a user." Sergent Bruno testified that "the amount that [appellant] possessed "was approximately forty doses of methamphetamine. This is an amount you would have for distribution." Because we defer to the jury's responsibility to fairly resolve conflicts in testimony, weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts, as established in *Isassi*, 330 S.W.3d at 638, we conclude that the jury could have found that appellant possessed the methamphetamine with intent to distribute. We overrule appellant's third issue.

### III. CONCLUSION

We affirm.

L. ARON PEÑA JR.
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
30th day of April, 2026.

11